**In re Petition for Disciplinary Action against Loren M. BARTA, an Attorney at Law of the State of Minnesota.**

No. C5–89–149.

Supreme Court of Minnesota.

Oct. 19, 1990.

William J. Wernz, Director of the Office of Lawyers Professional Responsibility,

Kenneth L. Jorgenson, Sr. Asst. Director, St. Paul, for appellant.

Michael J. Hoover, and George W. Flynn, Cosgrove, Flynn, Gaskins & Haskell, Minneapolis, for respondent.

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility commenced three petitions for disciplinary action against respondent Loren M. Barta. The first petition alleged that Barta's federal felony conviction on December 14, 1988 for tax evasion and filing false tax returns was conclusive evidence that Barta violated the Code of Professional Responsibility. Two later petitions alleged trust account violations and misappropriation of client trust funds. A referee hearing was held, and the referee found Barta had committed the charged violations and recommended he be indefinitely suspended from the practice of law.

The Director of the Office of Lawyers Professional Responsibility must prove misconduct by clear and convincing evidence. *In re Larsen*, 459 N.W.2d 115, 116 (Minn. 1990). This court will not set aside the findings of a referee in a disciplinary action unless they are clearly erroneous; moreover, this court has deferred to referees' findings when they rested on disputed testimony or in part on a respondent's demeanor, credibility, or sincerity. *Id.* Barta ordered a transcript in this case, hence this court need not treat the findings as conclusive but may subject them to review on the record. *Id.;* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR).

*Tax Fraud and Tax Evasion*

The referee found that Barta in 1983 and 1984 violated the Code of Professional Responsibility [1] by evading the payment of federal taxes on the income derived from his law practice and by filing false tax

---

1. DR 1–102(A)(3)–(6), Minn.Code Prof. Resp., which was effective in Minnesota until the Minnesota Rules of Professional Conduct became effective on September 1, 1985.

returns for 1983 and 1984. Barta concedes that he may not dispute this finding. Rule 19(a), RLPR. Barta was sentenced to six months in prison and is now on probation which, unless modified, will end in June 1992. Barta's probation includes a condition requiring that he "[e]xpedite payment of taxes, penalties, and interest." At the time of oral argument, Barta still owed back taxes, interest, and penalties for the tax years in question.

### Trust Account Violations

Barta admits violations in the handling of trust funds. Barta kept a non-interest-bearing client trust account from January 1983 to January 1986, which violated DR 9–103(A), (B), Minn.Code Prof. Resp. (1985), and Minn. R. Prof. Conduct 1.15. Barta also kept an interest-bearing account from September 1987 until his stipulated temporary suspension from law practice in February 1989. Barta never conducted monthly reconciliations nor maintained subsidiary client ledgers for either account, which violated DR 9–102 and 9–103, Minn.Code Prof. Resp., Minn. R. Prof. Conduct 1.15, and Lawyers Professional Responsibility Board Opinion No. 9. The first account experienced continual shortages of funds, and Barta commingled personal funds in the trust account and did not make payments from his business account to cover bank service charges on the trust account, which violated DR 9–102(A) and DR 1–102(A), Minn.Code Prof. Resp., and Minn. R. Prof. Conduct 1.15(a) and 8.4(c), (d). The second, interest-bearing account earned $247.35 net interest, but Barta neither distributed the interest to his clients nor paid it to the IOLTA board, which violated Minn. R. Prof. Conduct 1.15. Barta has yet to make restitution of this interest. In 1987, 1988, and 1989, Barta falsely certified that he was maintaining required trust account records when he renewed his attorney registration, which violated Minn. R. Prof. Conduct 1.15 and 8.4. From January 1983 to February 1989, Barta repeatedly permitted nonlawyer employees of his law office to sign checks drawn on the client trust accounts, which violated Lawyers Professional Responsibility Board Opinion No. 12.

### Misappropriation of Client Funds

Barta contested charges of misappropriating funds from clients Jeffrey Kukacka and Jacqueline Maras at the referee hearing and before this court. We have reviewed the referee's findings on the record, which includes documents introduced into evidence without objection by both Barta and the Director, as well as transcripts of three days of witness testimony.

### A. Kukacka Matters

Jeffrey Kukacka retained Barta to represent him in a bankruptcy claim, a tort claim and a workers' compensation claim in 1984. Kukacka's $600 cash payment for bankruptcy representation was not reported on Barta's tax return for 1984 but was established at the hearing through witness testimony and documents prepared by Barta and admitted into evidence. On August 20, 1984, when the city of Montgomery paid a $1,500.00 tort settlement to Mr. Kukacka, Barta had the settlement deposited in his client trust account. Barta then drew checks on the account to Mr. Kukacka and to pay costs, and paid himself $650 of his agreed fee of $750 for the representation. This left a balance of $100.00 in the Kukacka trust account, equal to Barta's unpaid earned fee. The referee found that the $100.00 remainder of Barta's fee was later paid by Barta to himself (not by issuing a check, but by being absorbed in a transfer of trust account funds to Barta at some later time).

When the workers' compensation action was settled on January 23, 1985, the insurer agreed to pay Kukacka $4,647.99 for temporary total disability benefits and $5,809.91 for permanent partial disability benefits. Barta had filed a fee petition and his fees totaling $2,291.58 were to be deducted from those payments and paid directly to Barta. Prior to February 26, 1985, two checks payable to Kukacka arrived and Barta had Kukacka endorse the temporary total disability check, in the amount of $4,647.93, so that he could receive his fees immediately. On February

26, 1985, Barta then paid himself $2291.58 after depositing this check in his trust account. Barta told Kukacka that when the attorney fee checks arrived, he would reimburse Kukacka for the fee payment. The Kukacka bankruptcy matter was ongoing when Barta deposited Kukacka's workers' compensation proceeds. On March 11, 1985, Barta received two checks for the total amount of attorneys fees and deposited them in his trust account on March 14, 1985. Barta had negotiated a settlement of a claim with one of the bankruptcy creditors and paid himself from the workers' compensation trust funds an additional fee of $1,900 without consulting his client. On March 14, 1985, Barta also sent that bankruptcy creditor a settlement check for $1,700, again taking the money from the trust account. After that payment, no other matters were pending for the Kukackas, and Barta had $1,047.93 in trust from Jeffrey Kukacka's disability checks. At least once Mr. or Mrs. Kukacka asked Barta for the remainder of the disability funds. Barta never provided an accounting nor returned the retained funds to Kukacka. At the referee hearing and before this court he claimed to have performed legal services during the following year that equalled or exceeded in value the amount held in trust. We believe the evidence in the record supports the referee's findings and conclusions of law that Barta misappropriated Kukacka's workers' compensation funds in violation of DR 1–102(A) and DR 9–102(A) and (B).[2]

## B. Maras Matters

In May 1983, Barta agreed to represent Jacqueline Maras in her dissolution action for a fixed fee of $2,500.00, without payment of a retainer. Barta discovered that real property owned by Ms. Maras and her husband, in which the Marases had substantial equity, was foreclosed with the redemption period about to expire. Barta made speedy arrangements to find a company to redeem the property, saving the Marases' equity interest. The company, S–Kids Co., sent a $2,000 down payment check (dated July 8, 1983) to Barta as an initial payment to Ms. Maras of her share of the profits from the redemption sale. Ms. Maras and then Barta's secretary endorsed the check, and the check was cashed. Barta kept $1,000 in cash as part of his agreed fee and gave the other $1,000 in cash to Ms. Maras, without giving Ms. Maras a receipt for her payment. Mr. Maras did not answer in the dissolution proceeding, and on July 21, 1983, Barta proved up the dissolution by default. The default judgment was highly favorable to Ms. Maras.

Following the entry of the judgment, Mr. Maras then contacted his attorney and indicated in a phone conversation to Ms. Maras that he would reopen the dissolution action; however, the order reopening the dissolution was not issued until August 1, 1984. In late July 1983, Mr. Maras and Ms. Maras gave their attorneys permission to negotiate a discounted immediate payment from

---

**2. DR 1–102. Misconduct**
(A) A lawyer shall not:
  (1) Violate a Disciplinary Rule.
     \*    \*    \*    \*    \*    \*
  (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
**DR 9–102. Preserving Identity of Funds and Property of a Client**
(A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable interest bearing trust accounts as set forth in DR 9–103. No funds belonging to the lawyer or law firm shall be deposited therein except as follows:
     \*    \*    \*    \*    \*    \*
  (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
  (1) Promptly notify a client of the receipt of his funds, securities, or other properties.
     \*    \*    \*    \*    \*    \*
  (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
  (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

the S–Kids redemption sale, since both were in desperate need of money. Barta negotiated an immediate payment of $26,-000, which the Marases agreed to share equally. Barta received the $13,000 Jacqueline Maras share on August 1, 1983 and deposited it in his client trust account. Two days later, Barta paid himself $8,000 from the trust account without consulting his client. The referee found this $8,000 fee from the $13,000 settlement unreasonable. On this date, before the reopening of the dissolution proceeding and after the default dissolution decree and the conclusion of the hastened S–Kids sale, Barta was representing Ms. Maras only in a promissory note dispute with the State Bank of Kerkhoven, which was not settled until September 1984. Ms. Maras felt unable to dispute Barta's retention of her funds from the S–Kids Co. sale because she had no receipts or other documents to prove the payments.

We believe the evidence supports the referee's findings and conclusions of law that Barta's payment to himself of the $8,000 from the Maras trust account without her consent and approval and for work which had not yet been performed violated DR 1–102(A) and DR 9–102(A) and (B), Minn. Code Prof. Resp., which were effective at the time of Barta's conduct.

### Discipline

This court gives great weight to the referee's recommendations as to sanctions but is the final determiner of which sanction is appropriate in each case. *In re Larsen,* 459 N.W.2d 115, 120 (Minn.1990). The Director sought Barta's disbarment and Barta has sought supervised probation.

Barta's felony convictions for filing false tax returns and evading federal income tax on his legal earnings is a serious crime reflecting adversely upon his character. In addition, there are aggravating factors including his misappropriation of client funds, trust account shortages, commingling and other trust violations over a 6–year period.

In mitigation, Barta practiced law since 1952 with no disciplinary actions against

him before his tax law violations were discovered. Investigators from the Internal Revenue Service and the Director's office interviewed at least 75 of Barta's former clients, turning up no complaints regarding his practice except those of Kukacka and Maras. During his three decades of solo practice Barta was also elected to three terms as Steele County Attorney. The referee found, and undisputed hearing testimony supports the finding, that Barta from time to time waived the fees of his poorer clients, a form of pro-bono service.

Our disposition of this case takes into account Barta's earlier years of practice as well as the above-mentioned recent serious violations. We conclude that respondent Loren M. Barta must be indefinitely suspended from the practice of law, with leave to apply for reinstatement only after successfully completing the criminal probation imposed for his federal tax law violations. In addition, before reinstatement he shall be required to pass the professional responsibility examination required of applicants to the Minnesota bar, to comply with the provisions of Rule 26, RLPR, and to pay the Director's actual costs and disbursements incurred in prosecuting this disciplinary action.

IT IS SO ORDERED.