In re Petition for DISCIPLINARY ACTION AGAINST R. James JENSEN, Jr., an Attorney at Law of the State of Minnesota.

No. C1–90–638.

Supreme Court of Minnesota.

April 19, 1991.

Thomas R. Vasaly, First Asst. Director, Office of Lawyers Professional Responsibility Board, St. Paul, for appellant.

R. James Jensen, Jr., St. Paul, pro se.

## OPINION

**PER CURIAM.**

Following a three-day hearing on two petitions filed by the Director of the Lawyers Professional Responsibility Board, Judge David E. Christensen, serving as referee, concluded that respondent, R. James Jensen, Jr., violated several rules of the Minnesota Rules of Professional Conduct, and recommended sanctions of a public reprimand and payment of costs and disbursements. Jensen challenges the referee's findings and recommendation for sanctions, and the director now recommends a 30-day suspension. We adopt the referee's findings and recommendation for sanctions.

The misconduct in this case arose out of post-divorce problems in this attorney's first divorce case. Jensen has been a licensed practicing attorney in the State of Minnesota since May 15, 1985. After he had taken the bar exam but before his admission to practice, Jensen began representing Gary Baglien under the Student Practice Rule in an action to dissolve his marriage to Vicky Baglien.

The allegations of misconduct in the first petition arise from Jensen's handling of Vicky Baglien's money held in Jensen's trust account by agreement of the parties. The referee found that Jensen mishandled Vicky Baglien's money held in his trust account, that he deliberately disobeyed a court order to return the funds, and that he made frivolous and bad faith claims in defending his position.

The Bagliens' May 1986 divorce decree awarded the couple's home to Vicky and required Vicky to make the mortgage payments on the home and Gary to pay $1500 per month in child support. Gary failed to pay child support, and Vicky failed to make the mortgage payments. In order to prevent foreclosure on the home, the parties agreed to contribute funds to be held in trust by Jensen. In late 1986, Jensen's trust account held $15,000 of Gary's money and $22,400 of Vicky's money. The mortgage company subsequently rejected the tender as inadequate, foreclosed, and obtained an $18,200.95 deficiency judgment.

After Jensen paid the deficiency judgment with Vicky's funds, the trust account held Gary's $15,000, Vicky's $4,199.05 ($22,400—$18,200.95), and interest. Meanwhile, on January 19, 1988, the district court ordered Gary to pay $32,400 in child support arrearages. Three days later, Jensen gave a $19,000 cashier's check drawn on the trust account to Vicky's attorney with the notation "Payment of Back Child Support" written on the check. In essence, Jensen used $4,000 of Vicky's money to satisfy Gary's child support obligations. Jensen then distributed the balance of the trust funds—$199.05 and all of the interest—to Gary.

On April 25, 1988, Hennepin County District Court Judge William S. Posten heard arguments on Vicky's motion to release her funds held in Jensen's trust account. Jensen argued that he was not obligated to return the funds because of the "res judicata" effect of previous court orders denying motions to release the funds. Jensen also claimed that he already had returned all of Vicky's money in the $19,000 check. On July 6, 1988, Judge Posten ordered Jensen to pay Vicky $4,143.21.[1] Jensen wrote Judge Posten a letter dated July 12, 1988, insisting that he rescind his order and stating: "There are so many mistakes in the order that I must assume that you have a new clerk who does not know the law and simply or accidentally passed this document in front of you."[2] Even though Jensen thought the court's order was in error, he did not appeal this order or the judgment entered thereon. Neither did he pay the $4,131.21.

1. Apparently, Vicky's attorney, and later the court, made an error in calculating the amount due to Vicky—the amount should have been $4,199.05 plus interest.

2. This letter was one of several written statements made by Jensen in his representation of Gary Baglien that demonstrate a lack of respect for the judicial process and for individual judges. Jensen continued to make unprofessional statements in these proceedings including a suggestion in his reply brief that this court "consider renaming the Board the 'Board of Lawyers Professional Irresponsibility.'"

About a year later, on July 10, 1989, Judge Posten issued an order finding Jensen in contempt of court for failing to obey the July 6, 1988, order, and for failing to appear as ordered at a third hearing on the motion to show cause why he should not be held in contempt. Judge Posten rejected Jensen's arguments that the district court did not have jurisdiction to order him to make the payment and that contempt proceedings were not a proper means to enforce the judgment, and the court of appeals subsequently affirmed Judge Posten. *Eberhardt Co. v. Baglien*, C0–89–1273, slip op. at 4–5, 1989 WL 138993 (Minn.App. Nov. 21, 1989), *rev. denied*, (Minn. Jan. 12, 1990).

The allegations of misconduct in the supplementary petition stem from Jensen's handling of an appeal for Gary Baglien from an order and a judgment establishing future child support and determining the amount of child support arrearages. The referee found that Jensen, in processing this appeal, violated several rules of Minnesota Civil Appellate Procedure, disobeyed several orders of the court of appeals, made ex parte communications with court of appeals judges, and incompetently represented his client.

At the outset of the appeal, Jensen failed to include a certified copy of the order from which he was appealing, and then failed to file the certified copy within the time limit ordered by the court. Jensen decided to file a statement of proceedings pursuant to Minn.R.Civ.App.P. 110.03, rather than order a transcript; however, he did not notify the court or opposing counsel of his intention to proceed pursuant to Rule 110.03 until 7 days after the period provided by Minn.R.Civ.App.P. 110.02, subd. 1. After Jensen failed to serve a proposed statement of proceedings on opposing counsel within the 15–day time limit, the court ordered Jensen to serve a proposed statement by October 27, 1989, with which he complied.

Jensen also failed to obtain the trial court's approval of the statement of proceedings within 60 days of filing the notice of appeal as required by Minn.R.Civ.App.P.

110.03. Later, after the court ordered Jensen to file an approved statement by December 11, 1989, Jensen did not contact the trial court to determine the status of the statement. Meanwhile, on December 7 and December 12, Jensen sent letters addressed to court of appeals judges, which the referee concluded sought explanations for and relief from the court's orders.

Finally, on December 28, 1989, the court of appeals dismissed Jensen's appeal because of his "repeated failure to abide by [the] court's direct orders regarding the processing of the appeal." At this time, Jensen still had not filed an approved statement of the proceedings as ordered, and his proposed statement of the proceedings included merely procedural information. The court of appeals later reinstated the appeal but limited the record to documents filed in the ·trial court. The court of appeals affirmed the trial court's reinstatement of the $1,500 per month child support, and held that, based on "the very limited record presented on appeal," the trial court's findings of the arrearages were not clearly erroneous. *Baglien v. Baglien*, C1–89–1668, C0–89–2018, 1990 WL 77058 (Minn. App. June 12, 1990).

The referee concluded that Jensen violated Minn.R.Prof.Conduct 3.4(c) (knowing disobedience of an obligation), 3.1 (frivolous claims), 8.4(d) (conduct prejudicial to the administration of justice), 1.1 (incompetence), and 3.5(g) (ex parte communication with judges). With a few significant exceptions, Jensen agrees with the factual findings which form the basis for ·the referee's conclusion, but he disagrees with the characterization of the facts and with the referee's conclusion that his behavior constitutes professional misconduct.

The director must prove misconduct by clear and convincing evidence. *In re Barta*, 461 N.W.2d 382 (Minn.1990). This court will not set aside the referee's findings unless they are clearly erroneous. *Id.* Moreover, we have deferred to referee findings which rest on disputed testimony or in part on the respondent's demeanor, credibility, or sincerity. *Id.* Because Jensen ordered a transcript, the referee's find-

ings of fact are not conclusive, but instead are subject to review on the record. *Id.*

■ Based on our independent review of the record, we find sufficient evidence to support the referee's findings that Jensen engaged in professional misconduct in violation of the rules of professional responsibility. Most of the disputed factual findings are credibility determinations. Jensen claims that he and Vicky's attorney orally agreed to distribute Vicky's funds in the $19,000 check labeled child support. The referee, however, rejected this testimony. Even crediting this testimony, Jensen knowingly disobeyed a court order to return Vicky's funds instead of challenging the order in a direct appeal. Jensen also claims that Judge Posten's July 6, 1988 order resulted from ex parte communication between Vicky's attorney and Judge Posten. Notwithstanding the referee's rejection of this claim, Jensen's obdurate disobedience of the order, when he might have appealed it, constitutes misconduct.

The referee concluded that Jensen's claims both at the contempt hearing and in the July 12, 1988, letter to Judge Posten were frivolous and in bad faith. The trial court properly entered the contempt order pursuant to Minn.Stat. § 481.14 (1990), which provides in relevant part:

> When an attorney shall refuse to deliver money or papers to a person from or for whom the attorney has received them in the course of professional employment, the attorney may be required to do so, upon petition, by an order of court. Such order may be granted by the court in which the action was prosecuted, * * *, and may require the attorney to make delivery within a time specified, or show cause why the attorney should not be punished for contempt.

■ In his July 12, 1988, letter to Judge Posten and at the contempt hearings, Jensen argued that the court did not have jurisdiction to enter the July 6, 1988, order. This argument was entirely without merit. The district court had jurisdiction because Jensen, an attorney and an officer of the court, represented Gary Baglien and in that capacity administered Vicky's funds in his

trust account in the dissolution and mortgage foreclosure actions, both of which were prosecuted in Hennepin County District Court. *See Akers v. Akers*, 233 Minn. 133, 46 N.W.2d 87 (1951). In *Akers*, an attorney, in his representation of the wife in a divorce case, received property from his client. After the divorce case was dismissed, the husband, claiming title to the property, brought an order to show cause why the attorney should not be required to release the property. We held that the trial court had jurisdiction under section 481.14 to compel the attorney in a summary proceeding to release the property to the husband even though the husband was not the attorney's client. *Id.* at 135–37, 46 N.W.2d at 89–90. Here, Jensen received Vicky's notice of motion and motion to return the trust funds. Jensen appeared in court, had the opportunity to argue, and did argue at an April 25, 1988 hearing that he was not obligated to return the funds to Vicky.

■ At the contempt hearings, Jensen argued that contempt proceedings were an impermissible means to enforce the judgment entered pursuant to the July 6, 1988 order. Jensen's reliance on Minn.Stat. § 550.02 (1990), was misplaced because section 481.14 plainly authorizes contempt proceedings to compel an attorney to return money obtained in the course of professional employment. The reduction of the order to judgment does not prevent the use of contempt proceedings against the attorney. *See* Minn.Stat. § 588.01, subd. 3(3) (1990); *Wenger v. Wenger*, 200 Minn. 436, 441–42, 274 N.W. 517, 520 (1937).

On appeal from the contempt order, the court of appeals remanded for a determination of whether the trial court properly could imprison Jensen because the trial court did not determine whether confinement was likely to produce compliance and whether Jensen was capable of compliance. *See Hopp v. Hopp*, 279 Minn. 170, 175, 156 N.W.2d 212, 217 (1968). Jensen's arguments at the contempt hearings, however, focused not on the issue whether imprisonment was proper, which was open to question, but rather on the propriety of the use

of contempt proceedings at all, which was clearly permitted under section 481.14 and well-settled Minnesota caselaw. Thus, Jensen's arguments at the contempt hearing and in his July 12, 1988, letter to Judge Posten were without merit.

■ The evidence also supports the referee's conclusion that Jensen made prohibited ex parte communications with judges about a pending case. Despite Jensen's claim that his letters to the court of appeals judges did not seek relief from court orders, the letters challenge the court orders, and, read most favorably to Jensen, ask the court to reconsider and clarify its orders. Because Jensen did not notify opposing counsel of these communications, the referee correctly concluded that Jensen violated Minn.R.Prof.Conduct 3.5(g).

■ Finally, the referee's conclusion that Jensen incompetently handled Gary Baglien's appeal is not clearly erroneous. Generally, we believe that courts can enforce compliance with procedural rules effectively with their own sanctions without relying on the attorney discipline system. Here, however, given Jensen's multiple rule violations and the evidence of prejudice to his client in addition to court sanctions, we cannot say that the referee's finding of incompetence was clearly erroneous.

The referee recommended that Jensen receive a public reprimand and pay costs plus disbursements. Explaining his recommended sanction, the referee wrote that "[h]ad the Director's recommendation not been limited to a public reprimand, this referee's recommendation for sanctions undoubtedly would have been more severe." In light of the referee's remarks and findings, the director now recommends that this court order a 30–day suspension.

■ The primary purpose of attorney discipline is not to punish the attorney but rather to protect the public, the legal profession, and the administration of justice. *In re Smith*, 381 N.W.2d 431, 434 (Minn. 1986). To determine the appropriate sanction we have weighed (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary rule violations; (3) the harm to the public; and (4) the harm to the legal profession. *Id.* Although we give great weight to the referee's recommendation, this court makes the final determination of the appropriate sanction. *In re Barta*, 461 N.W.2d 382, 385 (Minn.1990).

■ Considering these factors and taking into account the mitigating and aggravating factors, we adopt the referee's recommended sanction. Jensen's violations of his professional obligations all arose from his representation of Gary Baglien in an acrimonious divorce case, which began when Jensen was fresh out of law school. Jensen's predicament undoubtedly grew out of his inexperience and his frustrations with the post-divorce litigation in this case. We are assured that Jensen did not intentionally harm anyone, and that he did not personally gain from his misconduct. Jensen's lack of contrition and his tendency to shift blame to others is troubling. Were it not for his inexperience, he would be subject to some period of suspension. *See In re Getty*, 401 N.W.2d 668, 671 (Minn.1987). Nevertheless, because of our belief that a suspension in this case is unnecessary to further the goals of attorney discipline, we accept the referee's recommended sanction and issue this reprimand. We are hopeful that a public reprimand will alert Jensen to the importance of his professional obligations and cause him to adjust his behavior accordingly.

We feel that we would be remiss if we did not address another concern about Jensen's conduct in his representation of Gary Baglien and throughout these disciplinary proceedings: namely, what appears to be disdain for the judicial system and its personnel. Perhaps because of inexperience and his attempt to zealously advocate his client's cause, respondent lost sight of the bounds of proper professional behavior. To be an effective advocate, an attorney must comply with court rules and orders, develop a courteous and civil rapport with opposing counsel, and maintain respect for the bench. Counsel often will disagree with a judge's determinations; but attorneys have an opportunity to challenge these decisions with appropriate motions

and through the appellate process. An attorney does not advance the client's cause by labeling a judge's decision "sophomoric" or by making unfounded allegations about the judge's decision-making process. Here, Jensen's verbal and written attacks on the judiciary and its personnel only could have harmed his client.

We order that (1) respondent is publicly reprimanded for his conduct; and (2) respondent must pay costs of $750 and disbursements pursuant to Rule 24, Rules on Lawyers Professional Responsibility.

GARDEBRING, J. took no part in the consideration of this case.