In re Petition for DISCIPLINARY ACTION AGAINST R. James JENSEN, Jr., an Attorney at Law of the State of Minnesota.

No. C1–90–638.

Supreme Court of Minnesota.

Jan. 26, 1996.

■■■■■■■■■■■

■■■■■

■■■■■■■■■■■

Marcia A. Johnson, Director, Candice M. Hojan, Sr. Asst. Director, Office of Lawyers Professional Responsibility, St. Paul, for appellant.

R. James Jensen, Jr., St. Paul, for respondent.

■■■■■■■■■■

## OPINION

PER CURIAM.

Respondent R. James Jensen, Jr., is before this court on a petition for disciplinary action filed by the Director of the Office of Lawyers Professional Responsibility (Director) on January 3, 1995. The petition alleges that respondent engaged in misconduct consisting of failing to follow the rules of civil and appellate procedure, pursuing frivolous claims, making misrepresentations in judicial proceedings, and refusing to make court-ordered payments. A hearing on the petition was held before referee James D. Mason, who made findings of fact and conclusions of law and recommended that respondent receive a public reprimand and be placed on probation for 1 year. The Director ordered a transcript pursuant to Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR), and thus, the referee's findings and conclusions are not conclusive. The Director, while accepting the referee's findings of fact, disputes several of his conclusions of law and argues that respondent should be suspended from the practice of law for a minimum of 2 years. Respondent, while contending that his conduct did not amount to unprofessional conduct, suggests that a private reprimand is the appropriate discipline.

On April 19, 1991, this court publicly reprimanded respondent for misconduct arising out of his representation of Gary Baglien in post-divorce litigation and misuse of trust account funds belonging to Baglien's former spouse, Vicky Baglien. *In re Jensen,* 468 N.W.2d 541 (Minn.1991). We concluded that respondent violated several rules of civil appellate procedure, made frivolous and bad faith claims, disobeyed several court orders, engaged in ex parte communications, and incompetently represented his client. *Id.* at 544–45.

Respondent was again disciplined by this court on July 7, 1995, when he was admonished for engaging in conduct prejudicial to the administration of justice in violation of Minn. R. Prof. Conduct 8.4(d). *Appeal of Admonition Regarding A.M.E.,* 533 N.W.2d 849 (Minn.1995). The admonition was based on abusive behavior toward the complainant in response to an ethics complaint filed against respondent. *Id.* at 851. In concluding that respondent engaged in unprofessional conduct, we stated that we had "no doubt" that respondent's "behavior was intended to intimidate the complainant and constituted interference with the disciplinary process." *Id.*

■■■ The allegations of misconduct in the instant petition for disciplinary action essentially begin where the 1991 discipline ended and involve the same parties.[1]

---

1. Because of the detailed and complex nature of the underlying facts, we have chosen to set out those findings of fact in their entirety rather than the factual summary we would normally provide. Neither the Director nor the respondent has challenged the referee's findings of fact. They are as follows:

### FINDINGS OF FACT

1. That the Respondent was admitted to practice law in Minnesota on May 15, 1985. He currently practices law in St. Paul, Minnesota.

2. On April 19, 1991, Respondent was publicly reprimanded by the Minnesota Supreme Court for misconduct. That case is reported in the Northwestern Reporter, *In re Jensen,* 468 N.W.2d 541 (1991).

3. On May 5, 1995, this Referee received a Notice of Motion and Motion to Amend Pleadings. The Respondent requested: "withdrawing the answer and substituting in its place a pleading of nolo contendere or, in the alternative, striking the answer entirely, allowing this matter to proceed by default." There is no provision in the Rules of Lawyers Professional Responsibility to provide for "a pleading of nolo contendere"; it is also a matter for the determination of the

Supreme Court as to whether to permit striking the answer entirely and allowing the matter to proceed by default. See the recommendations where this Referee recommends denial of the motion.

4. On February 13, 1991, in a Hennepin County case, *Eberhardt v. Baglien*, Judge Posten ordered Respondent to pay: (a) $1,442.64, plus interest, to Vicky Baglien for her attorney's fees through September 11, 1989; (b) interest on Ms. Baglien's funds Respondent once held in his trust account; and (c) $1,585.50 to Ms. Baglien for her attorney's fees during the period January 17, 1990, to February 7, 1991 (Exhibit 2). Judgment was subsequently entered.

5. On May 21, 1991, Respondent appealed from the judgment entered on Judge Posten's February 13, 1991, order. On May 22, 1991, the Court of Appeals issued its notice of case filing in which it advised Respondent of his obligations under Rule 110.02, Rules of Civil Appellate Procedure (RCAP), to order a transcript within ten days and to file his completed certificate as to transcript within ten days thereafter. The notice also advised Respondent to file a certified copy of the decision from which he was appealing.

6. On June 18, 1991, Richard Sundberg, Ms. Baglien's attorney, moved for dismissal of Respondent's appeal on the grounds that Respondent had not filed a cost bond in the trial court as required by Rule 107, RCAP, and had not filed the certificate of transcript.

7. By order dated July 15, 1991, the Court of Appeals dismissed Respondent's appeal on the grounds that Respondent had failed to: (a) file a certificate as to transcript; (b) respond to the motion to dismiss; (c) file a cost bond with the trial court; and (d) file a brief 30 days after filing the appeal, as required by Rule 131.01, RCAP, if no transcript is obtained. The Court awarded Ms. Baglien $200 for attorney's fees.

8. On July 16, 1991, Respondent moved to reinstate the appeal and filed a supporting memorandum, a June 25, 1991, response to the motion to dismiss, a certificate as to transcript, a copy of the cost bond he represented to have filed with the trial court, and his brief.

9. On July 17, 1991, the Court of Appeals reinstated Respondent's appeal. As a condition of reinstatement, the Court required Respondent to provide proof by July 29, 1991, that he had filed the cost bond with the trial court and had paid the $200 in attorney's fees awarded on July 15, 1991. The Court also denied oral argument because Respondent's brief was filed late, and ordered that Respondent would not be permitted to tax costs and disbursements if he prevailed on appeal. Mr. Sundberg's brief was to be filed by August 19, 1991. Finally, the order stated, "Appellant is cautioned that the Court will grant no further extensions and will not tolerate further delays in the processing of this appeal."

10. On July 23, 1991, Respondent wrote to Chief Judge Wozniak stating his belief that Mr. Sundberg was perpetrating a fraud on the Court and requesting reconsideration of the Court's prior orders. Respondent enclosed a $200 check on which no payee was indicated. Respondent stated, "If the Court feels it necessary to fine me $200 on this matter, then accept this check as that fine." The letter to the Chief Judge was improper procedurally and the contents of the letter were also not appropriate. On July 30, 1991, Mr. Sundberg responded to Respondent's request for reconsideration.

11. On July 31, 1991, Judge Wozniak ordered that Respondent's request for reconsideration was denied and required Respondent to provide proof of payment of the $200 attorney's fees award by August 9, 1991, or risk immediate dismissal of the appeal. The Court stated that Respondent's request was not in proper form and contained "wholly inappropriate" allegations about Mr. Sundberg. The Court cautioned Respondent "That *all* requests for an order or other relief from this Court must be made by formal motion. Further 'letters' regarding this Court's actions or this appeal will be rejected . . ."

12. On August 7, 1991, as a result of Respondent's failure to provide proof that a cost bond had been filed with the trial court, the Court of Appeals ordered that Respondent provide such proof by August 16, 1991, and directed the appellate court clerk to provide a copy of the order to the Director's Office. Ms. Hunt considered this order to be proof of the Court's extreme patience with Respondent.

13. On August 9, 1991, Respondent filed with the Court of Appeals proof that he had: (a) filed a cost bond with the trial court; and (b) paid the $200 attorney's fees award.

14. On August 19, 1991, Mr. Sundberg mailed his brief, appendix and affidavits in support of motion for costs and attorney's fees to Respondent and the Court of Appeals. This was in accord with the Court of Appeals' July 17, 1991, order.

15. On August 20, 1991, Respondent filed a motion and supporting affidavit asking the Court of Appeals to "grant the relief requested by appellant in this appeal and to award appellant "[$]691.27 as fees and costs for presenting this appeal and this motion." The basis for Respondent's motion was that Mr. Sundberg purportedly had failed to file a brief by August 19 and had therefore "abandoned any contest to this appeal."

16. On August 21, 1991, the Court of Appeals denied Respondent's motion in its entirety. The Court concluded that Mr. Sundberg's brief was timely, having been served and filed by mail on August 19, and observed, "Even if a Respondent fails to file a brief, an appeal must be determined on the merits, and there is no default reversal for the appellant." The Court also reminded Respondent that the July 17 order specifically prohibited him from taxing costs.

17. On August 30, 1991, Respondent filed a response to Mr. Sundberg's request for attorney's fees.

18. On September 4, 1991, Respondent filed his reply brief and on September 11, 1991, filed a motion, affidavit and memorandum asking the Court to accept the reply brief even though it was

filed late. Despite the Court's August 21, 1991, determination that Mr. Sundberg's brief was timely filed and served, Respondent inappropriately implied in his affidavit and memorandum that Mr. Sundberg's brief had been untimely and relied on that purported untimeliness as a basis for his motion.

19. On November 26, 1991, the Court of Appeals issued its opinion (Exhibit 19) affirming Judge Posten's February 13, 1991, order in its entirety. In addition, the Court determined:

"Baglien seeks attorney's fees incurred in the defense of this appeal. Baglien is entitled to attorney's fees if Jensen acted in bad faith or asserted an unfounded position to delay the ordinary course of the proceedings or to harass. See Minn.Stat. Sec. 541.21 (1990). We conclude Jensen's conduct meets the statutory criteria and therefore award Baglien $1,500 as the reasonable cost of her attorney's fees incurred in this appeal."

20. Respondent's petition for review was denied. On April 13, 1992, the Court of Appeals entered judgment for $1,703.59 against Respondent, which included the $1,500 attorney's fees and $203.59 in costs and disbursements under Rule 139, RCAP.

*Respondent's Purchase of Judgments Against Mr. Sundberg and Contempt Finding*

21. Following resolution of Respondent's appeal, further proceedings were had before Judge Posten in *Eberhardt* regarding Respondent's ability to pay amounts that had been awarded to Ms. Baglien in the February 13, 1991, order, now affirmed. On April 28, 1992, Respondent appeared before Judge Posten pursuant to an order to show cause. Respondent acknowledged that "the money is owing at this point" but claimed he was unable to pay at that time.

22. On May 20, 1992, Judge Posten issued an order denying Ms. Baglien's motion to find Respondent in contempt of court on the basis that Respondent was currently unable to pay the amounts he owed, but awarded an additional $1,012.00 as attorney's fees against Respondent (Exhibit 22).

23. In June 1992, Respondent purchased two separate judgments against Mr. Sundberg, one in Hennepin County and one in Ramsey County. These judgments were unrelated to Mr. Sundberg's representation of Ms. Baglien. Respondent thereafter attempted garnishment from Ms. Baglien of amounts she owed Mr. Sundberg to satisfy the judgments.

24. Mr. Sundberg brought a counterclaim against Respondent on the Hennepin County garnishment. By August 20, 1992, order, Judge Gill consolidated that matter with *Eberhardt*, which was still pending in Hennepin County.

25. On September 1, 1992, Judge Posten heard Ms. Baglien's new motion in *Eberhardt* to find Respondent in contempt for failure to pay the judgments against him. In addition, Judge Posten had before him Respondent's motion to find Ms. Baglien in default for failure to respond to a garnishment summons and Mr. Sundberg's motion for default on his counterclaim. Judge Posten ordered from the bench that: (1) Respon-

dent had failed to comply with the Court's previous orders requiring him to pay Ms. Baglien; (2) conditional confinement was likely to aid Respondent's compliance; (3) Respondent had the opportunity to testify as to his ability to pay; (4) Respondent did not meet his burden of proving an inability to comply; (5) Respondent had the ability to gain release from custody through compliance or good faith efforts to comply (Exhibit 25). Judge Posten found Respondent in contempt of court and authorized a bench warrant for Respondent's arrest, issuance stayed until September 11 at 9:00 a.m.

26. On September 11, 1992, Respondent paid $6,523.93 to the Court. This payment largely satisfied Respondent's obligations to Ms. Baglien up to that point, except for $215.07, according to Mr. Sundberg (Exhibit 27).

27. On October 7, 1992, Judge Posten issued a written order based on the September 1, 1992, hearing, and awarded Ms. Baglien an additional $500 in attorney's fees. Judge Posten denied both Respondent's and Mr. Sundberg's motions for default judgments and although Judge Posten indicated funds Respondent used to purchase the judgments could have been used to pay Baglien, this Referee does not find Respondent falsely represented to the Court his financial ability to comply with its previous orders.

28. On March 18, 1993, Judge Posten dismissed Mr. Sundberg's counterclaim. The dismissal was appealed and on October 21, 1993, the Court of Appeals reversed and remanded the matter to Judge Posten for further proceedings.

*Respondent's Improper Judgment and Garnishment Against Ms. Baglien*

29. In a separate lawsuit, Ms. Baglien's first attorney in her dissolution, Richard Kadrie, sued her for attorney's fees in Ramsey County (*Kadrie v. Baglien*). Mr. Sundberg, representing Ms. Baglien, added Respondent as a third party defendant. On December 26, 1991, Judge Connolly ordered judgment in Respondent's favor on the third party complaint, and awarded costs and disbursements. Ms. Baglien's motion for a new trial was denied on February 26, 1992, without appeal. On July 29, 1992, Respondent filed an affidavit of costs and disbursements and obtained a judgment for $355 against Ms. Baglien and in favor of Respondent. Neither Mr. Sundberg nor Ms. Baglien was served with a notice of taxation of costs or a copy of the affidavit and had no opportunity to object to the costs under Rule 54.04, Minnesota Rules of Civil Procedure (MRCP).

30. On August 26, 1992, Mr. Sundberg requested that the Ramsey County court clerk vacate the July 29 judgment on the basis that Mr. Sundberg did not receive notice of taxation of costs or an affidavit detailing the costs.

31. On January 20, 1993, Mr. Sundberg advised Respondent of his belief that the July 29 judgment had been improperly entered. Mr. Sundberg also noted Respondent's failure to pay any part of the $500 awarded to Ms. Baglien on October 7, 1992.

33 [sic]. On February 3, 1993, the Ramsey County court clerk's office advised Mr. Sundberg that he had to make a formal motion and schedule a hearing regarding the July 29, 1992, judgment. Rule 60.01, [RCP].

34. On approximately February 4, 1993, Respondent garnished $340.39 from Ms. Baglien's wages.

35. On March 17, 1993, the Court heard Mr. Sundberg's motion to vacate the clerk's entry of judgment. On the same date, Judge Connolly ordered the judgment vacated and the garnishment proceeding dismissed and awarded Ms. Baglien $355.00 against Respondent (Exhibit 40).

*Respondent's Improper Proliferation of Litigation Against Ms. Baglien*

36. On June 23, 1992, Respondent purchased assignments of two judgments against Mr. Sundberg, one in Hennepin County for $1,422.77 (*Mpls Clinical Assoc. v. Sundberg*) and one in Ramsey County for $5,633.28 (*State of Minnesota v. Fox & Hounds, Richard J. Sundberg and James Helling*).

37. On June 25, 1992, Respondent attempted to serve a garnishment summons by mail on Ms. Baglien. This service was ineffective, as M.S. Sec. 571.72 requires personal service or service by certified mail of a garnishment summons. The garnishment summons, although captioned in Hennepin County, reflected the amounts of both judgments. The better practice is for the attorney who sends out the garnishment summons to send a separately captioned summons for each judgment.

38. On August 22, 1992, Respondent served on Ms. Baglien a second garnishment summons issued in Hennepin County, which again reflected the amounts of both judgments. Respondent did not serve Mr. Sundberg, the Defendant, with the garnishment documents. It is necessary to serve the judgment debtor each time a garnishment summons is served on a garnishee.

39. On September 11, 1992, Ms. Baglien disclosed on the second garnishment disclosure statement that she owed Mr. Sundberg in excess of $5,000.

40. On October 21, 1992, Respondent obtained a Ramsey County court writ of execution which the Hennepin County Sheriff served on Ms. Baglien. On January 29, 1993, the writ of execution was returned unsatisfied with the notation "third party had no funds or property belonging to debtor."

41. On February 25, 1993, Respondent filed a motion, affidavit, memorandum and supplemental complaint in Ramsey County in *State v. Fox & Hounds* for an order "allowing assignee of the plaintiff (State of Minnesota) to join Vicky J. Baglien as a party to this action for failing to respond to a garnishment levy issued by *this* court" (emphasis supplied). In actuality, the garnishment was issued by the attorney and captioned in Hennepin County. Respondent incorrectly served Ms. Baglien, a non-party, by mail "according to the Rules." She should have been personally served. On March 5, 1993, Mr. Sundberg, appearing as a pro se defendant, filed a memorandum and affidavits of himself and Ms. Baglien opposing Respondent's motion. On March 18, 1993, Judge Connolly denied Respondent's motion and referred the matter to Judge Posten in Hennepin County because the August 1992 garnishment summons to which Ms. Baglien had responded had ben [sic] issued in Hennepin County (Exhibit 47).

42. On April 1, 1993, Respondent filed a second motion, affidavit and memorandum in Ramsey County to join Ms. Baglien as a party to the action for failure to respond to the garnishment levy. This motion, except for the dates, was identical to the February 25 motion, which Judge Connolly had denied on March 18, 1993. On April 6, 1993, Respondent served on Mr. Sundberg and Ms. Baglien copies of a Ramsey County garnishment summons (third garnishment).

43. On April 23, 1993, Mr. Sundberg, appearing pro se, filed a memorandum opposing "the same motion by plaintiff which was previously denied by the court," supported by his affidavit. On May 3, 1993, Judge Connolly denied Respondent's second motion as having been served beyond the 180 day period set by M.S. Sec. 571.79 for discharge of the garnishees (Exhibit 51).

44. On May 13, 1993, Respondent served a third motion and memorandum in Ramsey County for amended findings. There was no change from the May 3 order to argue. The hearing was set for June 2, 1993. On May 18, 1993, Mr. Sundberg filed a motion for an award of attorney's fees and a memorandum "opposing third frivolous motion of R. James Jensen, Jr., and in support of Mr. Sundberg's motion for award of attorneys fees." On June 14, 1993, Judge Connolly denied Respondent's motion to reconsider (Exhibit 54).

45. On July 15, 1993, Respondent sent interrogatories to Ms. Baglien and Mr. Sundberg at Mr. Sundberg's office address, as well as a demand for production of documents to Mr. Sundberg only. As the judgment debtor, Mr. Sundberg was subject to post-judgment discovery. As a non-party, Vicky Baglien was not subject to discovery unless in connection with service of an additional garnishment summons. On August 17, 1993, Mr. Sundberg answered the interrogatories and made objections to the production demand on his own behalf, and returned Mr. Baglien's interrogatories to Respondent stating:

I do not represent Vicky J. Baglien in Ramsey County Court File # C9–81–453037. As you know, she is not a party to that action, and therefore not subject to Rule 33 of the Rules.

46. On September 2, 1993, Respondent filed in Ramsey County a fourth motion, memorandum, and affidavit for an order "compelling both Respondents to this motion (Mr. Sundberg and Ms. Baglien) to answer discovery," and for attorney's fees. Since Mr. Baglien [sic] was not a party, she was not required to answer the interrogatories. The motion was frivolous. The motion papers were served by mail on Mr. Sundberg individually and as Ms. Baglien's attorney. On September 24, 1993, Mr. Sundberg filed a memorandum and affidavit "opposing Jensen Discovery Motion." After an October 2, 1993,

We impose sanctions to protect the public, to guard the administration of justice, and to deter future misconduct. *In re Isaacs,* 451 N.W.2d 209, 211 (Minn.1990). In determining the appropriate sanction, "we weigh the nature of the misconduct, the cumulative weight of the disciplinary rule violations, and the potential harm to the public, to the legal profession, and to the administration of justice." *In re Shoemaker,* 518 N.W.2d 552, 555 (Minn.1994). This court gives great weight to the recommendation of a referee; however, the court retains final responsibility for determining appropriate sanctions. *In re Simonson,* 420 N.W.2d 903, 906 (Minn.1988).

A lawyer's prior disciplinary history is relevant to determining appropriate sanctions, and we review the discipline to be imposed in light of the earlier misconduct. *In re Ruffenach,* 486 N.W.2d 387, 390 (Minn. 1992); *In re Getty,* 452 N.W.2d 694, 698 (Minn.1990). Once disciplined, this court expects a renewed commitment to comprehen-sive ethical and professional behavior from attorneys. *In re Hart,* 445 N.W.2d 836, 839 (Minn.1989).

In respondent's first disciplinary proceeding, we made the following observations regarding respondent:

> Were it not for his inexperience, he would be subject to some period of suspension. * * * We are hopeful that a public reprimand will alert Jensen to the importance of his professional obligations and cause him to adjust his behavior accordingly.

*In re Jensen,* 468 N.W.2d at 545 (citations omitted). The public reprimand, however, did not cause respondent to adjust his behavior. In fact, this disciplinary proceeding involves similar misconduct, the same parties, and appears to be a continuation of the same conduct which resulted in the public reprimand.

Respondent does not deny committing the acts that form the basis for this disciplinary action, but believes that his conduct was not unethical and urges us to adopt the conclu-

---

hearing, Judge Markert on January 21, 1994, denied Respondent's motion because Ms. Baglien was not a party to the action and Respondent had waived his right to receive answers and documents form [sic] Mr. Sundberg by failing to bring the discovery motion within the 15 days of Mr. Sundberg's objections (Exhibit 59).

47. On February 23, 1994, Respondent obtained an order to show cause directing Ms. Baglien to appear at a March 23, 1994, contempt hearing. Respondent filed only a memorandum of law and his own affidavit to obtain the order to show cause. Respondent did not make a written motion and didn't advise the Court why an order to show cause was required or why Ms. Baglien or Mr. Sundberg could not be notified of the request for the order to show cause. Respondent did not advise the Court that he had three times been denied the joinder of Ms. Baglien as a party. Respondent had an undersigned order to show cause served on Ms. Baglien, but did not serve or otherwise notify Mr. Sundberg of the motion or hearing. This motion was frivolous.

48. On March 21, 1994, Mr. Sundberg advised the Ramsey County court by letter of his request for sanctions in Ms. Baglien's favor against Respondent, with an affidavit in support of the request.

49. On April 11, 1994, Judge Fitzpatrick denied Respondent's motion because the service on Ms. Baglien was improper, the case had been heard four times on the same issue, and an appeal was pending. Judge Fitzpatrick awarded Ms. Baglien $200 in attorney fees (Exhibit 63).

*Respondent's Handling of 1994 Appeal*

50. On February 24, 1994, Respondent served a notice of appeal and statement of the case on Ms. Baglien directly, even though she had been represented by Mr. Sundberg at the October 2, 1993, hearing, purporting to appeal from four Ramsey County court orders in *State v. Fox & Hounds,* dated March 18, May 5 and June 14, 1993, and January 21, 1994. Respondent failed to serve Mr. Sundberg with the notice of appeal, even though he was a party to the case. See Rule 103.01, Subd. 1(a), RCAP. Ms. Hunt testified that Mr. Sundberg should have been served and that only one of the four orders was appealable.

51. In the statement of the case, filed with the clerk of appellate courts on February 24, 1994, Respondent stated, "Execution was then served but garnishee stated that she had already disposed of the money and now no longer owed the defendant anything." In fact, Ms. Baglien stated only (to the sheriff), "At the present time there is nothing due and owing to Richard J. Sundberg, nor do I hold any of his property." Respondent also falsely stated, "(Respondent's motion) was denied a second time because appellant had not done any discovery." In fact, Respondent's second motion was denied as being brought beyond the statutory time limit.

52. On March 21, 1994, Mr. Sundberg filed a motion to dismiss the appeal and for an award of attorney's fees. On April 14, 1994, the Court of Appeals dismissed the appeal on the basis that Respondent had failed to serve Mr. Sundberg (Exhibit 66).

sions of the referee, who determined that there were only two actual violations of the rules of professional conduct. Although we give great weight to the conclusions of a referee, *In re Ray*, 452 N.W.2d 689, 692 (Minn.1990), we conclude that the referee's conclusions here minimize the serious ethical violations that occurred. We need not address specific conclusions of the referee, but conclude generally that respondent violated a number of our rules of professional conduct, including Minn. R. Prof. Conduct 3.1 (frivolous claims); Minn. R. Prof. Conduct 3.3(a)(1) (false statement of fact to a tribunal); Minn. R. Prof. Conduct 3.4(c) (disobeying an obligation under the rules of a tribunal); Minn. R. Prof. Conduct 8.4(c) (conduct involving misrepresentation); and Minn. R. Prof. Conduct 8.4(d) (conduct prejudicial to the administration of justice).

Respondent has exhibited "a lack of judgment that conflicts with his * * * position as 'an officer of the legal system and a public citizen having special responsibility for the quality of justice.'" *In re Graham*, 453 N.W.2d 313, 322 (Minn.1990) (quoting Minn. R. Prof. Conduct, Preamble). An attorney has a duty not to abuse legal process or procedure, yet respondent has used his position as an attorney to harass Vicky Baglien and her attorney. Essentially, respondent was attempting to garnish Baglien to pay the judgment that he in turn owed to her. Respondent was able to pursue Baglien as a garnishee only because she owed fees to her attorney, incurred through extended litigation with respondent and unpaid because respondent had not paid her the attorney fees the court awarded her in that litigation. Even after Baglien had no further obligation to her attorney, respondent continued to pursue her as a garnishee to hold her responsible for her perceived violation of the garnishment rules.

We are also concerned with the numerous procedural errors made by respondent which contributed to this protracted litigation and resulted in a drain on judicial resources. For example, respondent pursued four motions, an order to show cause, and an appeal to the court of appeals in an effort to join Baglien in the garnishment proceedings, but because of respondent's procedural errors, no court ever reached the merits of his claims. Respondent's failure to follow the rules of civil and appellate procedure cannot be excused. If the procedural errors were simply inadvertent mistakes, they reflect adversely on respondent's competence to practice law. If they were intended to further harass Baglien and her attorney by drawing out the litigation, they reflect adversely on respondent's fitness as a lawyer.

Respondent's misconduct falls into three categories: harassing and frivolous litigation, neglecting professional obligations, and misrepresentations to judicial officers. This court strives to achieve consistency in imposing sanctions, yet we have never had occasion to decide an attorney discipline case involving misconduct similar to respondent's. We have suspended attorneys in the past for conduct which included harassing and frivolous litigation. *In re Tieso*, 396 N.W.2d 32 (Minn.1986) (imposing 3–month suspension on an attorney for filing a single frivolous and vexatious lawsuit with the intent to harass and embarrass his ex-wife and her new husband and for refusing to pay court-awarded attorney fees); *see also In re Weiblen*, 439 N.W.2d 7 (Minn.1989) (suspending attorney indefinitely for pattern of misconduct including three frivolous claims, as well as representing client with adverse interests, violating rules of court, continuing ex parte contacts with judges, attempting to secure general exculpation from potential malpractice claims, coupled with misunderstanding of legal procedures and rules governing professional conduct); *In re Tymiak*, 343 N.W.2d 291 (Minn.1984) (disbarring attorney for knowing advancement of unwarranted claims and filing of suits to harass others, failure to comply with numerous court orders, expenditure of money from client's trust fund for personal use, the making of false or scandalous statements in the course of litigation, and engaging in representation resulting in conflicts of interest).

We have also suspended attorneys for neglecting professional obligations. *See In re Ruffenach*, 486 N.W.2d 387, 390 (Minn.1992) (imposing indefinite suspension for a minimum of 90 days on an attorney with a prior

history of discipline who failed to pay voluntarily a valid legal malpractice judgment and gave false and misleading information on financial disclosure forms); *In re Pokorny,* 453 N.W.2d 345 (Minn.1990) (ordering indefinite suspension with conditions for reinstatement for failure to attend three scheduled court appearances, issuance of an insufficient check in payment of court-awarded fees, and failure to pay two judgments for law-related debts).

Finally, we have suspended attorneys for misrepresentations made to our judicial officers. In doing so, we have noted that when " 'a lawyer demonstrates a lack of that truthfulness and candor that the courts have a right to expect of their officers to the end that the system of justice will not be undermined, courts do not hesitate to impose severe discipline.' " *In re Lochow,* 469 N.W.2d 91, 99 (Minn.1991) (quoting *In re Schmidt,* 402 N.W.2d 544, 548 (Minn.1987)). The *Lochow* court concluded that the "proper focus" is "not on the harm caused by the attorney, but the fact that misrepresentations were made before a judicial officer." *Id.* Lochow was suspended for a minimum of 6 months for misrepresentations and deceptive statements. *Id.; see also In re Jagiela,* 517 N.W.2d 333 (Minn.1994) (imposing 6-month suspension on an attorney for participation in drafting of back-dated document, submitting that document to opposing counsel and to the court, misrepresenting the document in pleadings, and failing to correct false deposition and trial testimony concerning the document); *In re Klein,* 442 N.W.2d 317 (Minn. 1989) (ordering indefinite suspension of attorney who, during course of handling dissolution action, misrepresented facts to the court and opposing counsel and fraudulently altered and notarized court documents).

Although we recognize that a suspension of any length is harsh, particularly for a sole practitioner, respondent's misconduct is such that "severe discipline" is warranted to protect the public and deter similar misconduct. Our decision is supported by the fact that respondent either refuses to acknowledge or simply fails to understand that he has violated his ethical responsibilities as a lawyer. Therefore, in light of respondent's prior mis-

conduct and current violations of our rules of professional conduct, we order that, effective 20 days from the date of this order, respondent be indefinitely suspended from the practice of law with no right to apply for reinstatement for 18 months. Respondent is required to comply fully with Rules 24 and 26 of the Rules on Lawyers Professional Responsibility. If respondent seeks reinstatement, he shall also comply fully with Rule 18(e) of the Rules on Lawyers Professional Responsibility.

Indefinite suspension with conditions for reinstatement.

ANDERSON, J., took no part in the consideration or decision of this case.