In re Petition for Disciplinary Action against Richard D. WEIBLEN, an Attorney at Law of the State of Minnesota.

No. CX–88–721.

Supreme Court of Minnesota.

April 28, 1989.

William J. Wernz, Director Lawyers Professional Responsibility, Candice M. Hojan, Sr. Asst. Director, St. Paul, for appellant.

Richard D. Weiblen, Minneapolis, for respondent.

## PER CURIAM.

Findings of fact of a referee appointed by this court resulted in conclusions of law that between 1980 and 1984 respondent Richard D. Weiblen, during the course of representing one client, had violated various provisions of the disciplinary rules governing lawyers' conduct as had been alleged in a petition filed by the Director of the Lawyers Professional Responsibility Board (LPRB). Because the respondent did not order a transcript of the hearing, the referee's findings are conclusive. Rules on Lawyers Professional Responsibility (RLPR), Rule 14(e). The findings support the referee's conclusions of law, which, as set out in this opinion, lead us to conclude that respondent should be indefinitely suspended from the practice of law.

The misconduct charges against respondent, an attorney who has been licensed to practice law for almost 40 years, stem from his representation of Daryl McCarthy. McCarthy owned McCarthy Construction, Inc. which was involved in developing two tracts of land in Lakeville, Minnesota.

Sometime after acquiring the property in 1979, McCarthy, on behalf of the corporation, contracted with Genz–Ryan Plumbing & Heating for plumbing work in a fourplex being erected on part of the property. In connection therewith, McCarthy personally signed a promissory note for $12,441.50. Upon nonpayment of the note when due, Genz–Ryan sued McCarthy individually and McCarthy Construction, Inc. for breach of contract and default on the promissory note.

Even though McCarthy had been sued individually, as well as the corporation, respondent advised McCarthy to allow a default judgment to be entered because McCarthy was not personally liable for the debt of the corporation. Eventually default judgment was entered against McCarthy personally as well as the corporation. While Genz–Ryan was attempting to collect its judgment, respondent advised and assisted McCarthy in deeding the Lakeville property to respondent's son who then deeded the property back to McCarthy's wife as a scheme designed to frustrate Genz–Ryan's collection efforts. Later respondent brought an *ex parte* motion to have the default judgment entered against McCarthy individually vacated erroneously claiming that the action had been commenced against only the corporation and that the judgment had, therefore, been improperly entered against McCarthy individually. In fact, the judgment was based on a breach of contract by McCarthy individually and a default on the note by McCarthy. In response to the *ex parte* motion, the judgment was vacated. When it learned of the vacation order which had been entered *ex parte*, Genz–Ryan moved the court to vacate it. Although that motion was granted, the effect of respondent's action in securing the *ex parte* vacation order had

been to dissolve Genz–Ryan's judgment lien against the property, and, because title to the property had been conveyed to McCarthy's wife, to prevent Genz–Ryan from foreclosing its original judgment lien. Therefore, Genz–Ryan was compelled to commence a separate action to have the conveyance to Mrs. McCarthy declared fraudulent and to have its judgment lien declared to be valid. In response, respondent counterclaimed on behalf of McCarthy alleging abuse of process and claiming damages of $50,000. The trial court granted Genz–Ryan summary judgment setting aside the purported transfer to Mrs. McCarthy, holding the prior judgment lien of Genz–Ryan to be valid against the property, ordering foreclosure sale, and assessing McCarthy bad faith damages of $4,279 in attorney fees. Although the trial court did not specifically address the counterclaim for abuse of process, implicit in the order granting Genz–Ryan relief is its rejection by the court.

Nevertheless, in September 1983, Weiblen, allegedly acting on behalf of McCarthy, filed an affidavit of no answer, affidavit of non-military status, and an affidavit of amount due and costs and disbursements, after which judgment was entered against Genz–Ryan on the counterclaim in the amount of $50,005. His actions were all taken *ex parte* and without notice to Genz–Ryan or to its attorneys, and without a court order. Again, Genz–Ryan was compelled to move to vacate this judgment. The trial court granted Genz–Ryan's motion relying in part, at least, on Rule 60.-02(c), Minn.R.Civ.P., which permits vacation of a judgment obtained through fraud, misrepresentation, or other misconduct, and, as well, assessed McCarthy an additional $250 in attorney fees.[1]

Meanwhile, as that litigation was in process, respondent, in December 1982, obtained another *ex parte* order extending the redemption period on the Lakeville property. Thus it was necessary for Genz–Ryan once again to have to go into court to get the order purporting to extend the redemption period vacated.

Respondent's conduct and actions with respect to the Genz–Ryan matter violated DR 1–102(A)(5) and (6) (lawyer shall not engage in conduct prejudicial to the administration of justice and/or any other conduct that adversely reflects on his fitness to practice law); DR 6–101(A)(1), (2), (3) (lawyer shall not handle a legal matter if he is incompetent, or inadequately prepared, and shall not neglect a matter); DR 7–102(A)(1), (2), (5), (7) (lawyer shall not make a harassing or unwarranted claim, and shall not make a false statement of law or fact, or engage in fraudulent conduct); DR 7–110(B) (lawyer shall not communicate with judge without notice to adversary).[2]

In September 1983, Ed Lutz Construction Co. commenced suit against McCarthy claiming the value of materials and services it had provided to McCarthy in connection with the Lakeville property development. As he had in the Genz–Ryan matter, respondent again interposed a counterclaim alleging malicious prosecution and abuse of process. The trial court found the asserted counterclaim meritless and awarded Lutz judgment for the full amount of its claim. Respondent's conduct in asserting this patently frivolous counterclaim violated DR 1–102(A)(5) and (6) (lawyer shall not engage in conduct prejudicial to administration of justice, or conduct reflecting adversely on fitness to practice law); DR 2–109(A)(1) and (2) (lawyer shall not accept employment where client's purpose is to harass, or present a claim where defense is not warranted in existing law); DR 6–101(A)(1), (2) and (3) (lawyer shall not neglect a legal

---

1. Respondent unsuccessfully attempted to appeal this order to the court of appeals. See *Genz–Ryan Plumbing & Heating Co. v. McCarthy,* 350 N.W.2d 485 (Minn.App.1984). In connection with the appeal, McCarthy was assessed another $750 in attorney fees by the court of appeals.

2. The Minnesota Code of Professional Responsibility was repealed effective August 31, 1985, and replaced September 1, 1985, by the Minnesota Rules of Professional Conduct patterned substantially after the American Bar Association Model Rules of Professional Conduct. Respondent's conduct in the Genz–Ryan matter took place prior to the repeal as did all of the conduct in connection with this disciplinary action.

matter, or handle a legal matter without adequate preparation, or handle a legal matter a lawyer knows he is not competent to handle); DR 7–102(A)(1) and (2) (lawyer shall not take a harassing position, or knowingly advance a claim or defense not warranted under existing law).

In May 1984, McCarthy who had not been adequately kept informed by respondent, and, therefore, was largely unaware of the various actions which had been taken by respondent in connection with the Genz–Ryan and Lutz matters, entered into a purchase agreement whereby he would sell the Lakeville property. In order to complete the sale, however, McCarthy had to redeem from another creditor's judgment lien foreclosure sale. To aid McCarthy, respondent loaned him $11,034.25. Thereafter, without McCarthy's prior knowledge, respondent filed a purported attorney lien against the Lakeville property for $20,439.14 which purportedly represented the amount of the loan plus respondent's fees and expenses in connection with the Genz–Ryan and Lutz matters. McCarthy was not notified of the lien, nor prior to the time it was filed had respondent ever furnished McCarthy directly or indirectly any bill for claimed legal services.

In connection with the proposed sale of the Lakeville property, McCarthy completed portions of the seller's affidavit to be used at the time of the closing. After McCarthy had signed an incomplete affidavit form, respondent, without his client's knowledge, completed the affidavit to contain a purported listing of all encumbrances against the property. Absent from the listing was reference to the Lutz litigation and judgment although both were known to respondent at the time of the closing. Nevertheless, respondent submitted the signed and completed affidavit at the closing as representing the then existing facts relative to pending litigation and liens affecting the property.

The check tendered at the closing was originally drafted payable to Mr. and Mrs. McCarthy in the amount of $20,000. At respondent's insistence, his name was added as payee on the check. Before sending the check to McCarthy, respondent endorsed it and added to his endorsement a "general release" which reads:

Daryl C. McCarthy and Melissa L. McCarthy by endorsement, cashing or depositing of this check hereby certifies that this is a release of any and all claims or causes of actions whatsoever that we may have or could have against our attorney, Richard D. Weiblen, by his acting as our attorney and representing us in any and all matters for us, and this is a General Release.

McCarthy refused to endorse the check.

In connection with this real estate transaction, the referee found respondent's conduct violated DR 1–102(A)(5), (6); DR 5–103(A), (B) (lawyer shall not acquire proprietary interest in subject matter of client's claim, or lend financial assistance to client while representing clients); DR 6–101(A)(1), (2), (3); DR 6–102 (lawyer shall not attempt to limit liability to client); DR 7–102(A)(5), (7).

Eventually, after McCarthy had ascertained the nature and extent of respondent's conduct relative to his representation in matters arising out of the Lakeville project, McCarthy made complaint to the LPRB. In late 1987, the Director issued charges against respondent. Although respondent, at a meeting with personnel in the Director's office, agreed to specifically admit, deny or qualify the Director's charges, he, instead, sent a letter with a "general denial" to all charges. Likewise, later, after the petition seeking disciplinary sanctions was served upon the respondent, he again answered with a "general denial" to all charges. Notwithstanding that he had interposed the "general denial," at the referee hearing respondent interposed no objection to the Director's numerous exhibits and conducted very little cross-examination of witnesses. He apparently had no substantial dispute with the factual allegations of the petition, and, in essence, put in no defense.

At the same time respondent served his answer to the disciplinary petition, he included a document entitled "complaint and counterclaim" against the LPRB, its indi-

vidual members, and members of the Hennepin County District Ethics Committees alleging abuse of process. He likewise commenced a separate action in which similar allegations were advanced in Hennepin County District Court. The Director referred respondent's complaint in the district court matter to the Minnesota attorney general's office which filed a motion to dismiss. Respondent attended the hearing on the motion but did not oppose dismissal motion. Nevertheless, notwithstanding that the Hennepin County District Court dismissed that action, and that respondent was present and knew that it had been dismissed, before the referee, respondent attempted to further pursue this purported "counterclaim" at and as part of the referee hearing. The referee awarded the Director's office $750 in attorney fees as a result of the general denial which respondent had enclosed when, in fact, as it appeared, he was not contesting any of the allegations of the petition or presenting any defense thereto, but which put the Director's office to unnecessary expenditures of time and resources.

The referee recommended that appropriate discipline would be a public reprimand plus three years of supervised probation. Although we traditionally afford to referee's recommendations respecting a suggested appropriate discipline great deference, in each case the final responsibility to impose discipline rests with this court. *In re Pyles*, 421 N.W.2d 321, 325 (Minn.1988). The determination of appropriate discipline follows from an analysis of the nature of the misconduct, the cumulative weight of the disciplinary violations, the harm which has occurred in the past, and is potentially likely to occur in the future, to the public, the profession, and the system of justice itself. *In re Schaefer*, 423 N.W.2d 680, 683 (Minn.1988). Because Weiblen failed to present any defense at the referee hearing and failed to file a brief with this court before the hearing, there exists no evidence of mitigating factors. The respondent did

appear before this court at the time of oral arguments, was afforded an opportunity to, and did make a statement relative to these charges. Moreover, although the time for filing briefs had long since expired (respondent's brief was due on November 19, 1988, pursuant to this court's order entered September 20, 1988), respondent delivered a "brief" to individual members of the court after the hearing in which he basically reiterated the position he had taken when he appeared before the court.[3] The lamentable consequence of his appearance and "brief" was to demonstrate that respondent has no conception that he has transgressed any of the disciplinary rules or caused his client, or the judicial system itself, any damage by his conduct.

The Director argues that respondent's actions during his representation of McCarthy demonstrates incompetency warranting the more severe sanction of suspension rather than the recommended probation. For several reasons we agree with the Director.

■ The conduct of loaning money to his client, McCarthy, and surreptitiously filing a lien against his client's property while simultaneously purporting to represent him at a real estate closing, and thereafter attempting to obtain a complete release from liability from any malpractice claims as a result of his actions "warrants serious condemnation as well as discipline." *In re Schmidt*, 402 N.W.2d 544, 549 (Minn.1987) DR 6–102(A). The disciplinary rules governing professional conduct of lawyers clearly bar any attempt of exoneration from personal malpractice liability. *Id.* In *Schmidt*, where the lawyer had similarly attempted to procure a waiver of liability from his client, we not only publicly reprimanded him, but additionally, suspended him for six months.[4]

Moreover, by asserting claims that were patently frivolous, respondent has repeatedly demonstrated his present incompetence. Indefinite suspension has been previously imposed when the attorney was

---

3. Not only was the "brief" untimely, but so far as we can ascertain, it was submitted *ex parte.* See Rule 29 RLPR.

4. In *Schmidt*, as here, the lawyer had violated, as well, other disciplinary rules.

charged with only one count of misconduct involving a single frivolous claim. *In re Tieso*, 396 N.W.2d 32 (Minn.1986). In contrast, the counterclaims filed by respondent in the Genz–Ryan litigation, in the Lutz litigation, and in these disciplinary proceedings were each frivolous—three separate and distinct frivolous claims. Two of them resulted in respondent's client, McCarthy, being assessed additional and unnecessary attorney fees. For similar conduct, indefinite suspension has been deemed appropriate. *See In re Davis*, 264 N.W.2d 371 (Minn.1978) (where frivolous claim had been filed in federal court and the lawyer there was charged with two other counts of misconduct.) Disbarment was even ordered in *In re Agnew*, 311 N.W.2d 869 (Minn.1981) (involving filing of an action merely to harrass the opposing litigant as well as other misconduct.[5]

 Finally, the fact that this case involves a pattern of misconduct involving multiple offenses, as well as the fact that respondent has adamantly refused to acknowledge that in violating rules of practice, he also violated his ethical responsibility as an attorney at law, seems to us to indicate that probation at this point would fail to protect the public and ensure the integrity of the judicial system itself. In order that those ends may be attained, respondent must first acknowledge that he comprehends his ethical responsibilities when he undertakes a course of representation of clients. Until he can demonstrate that he does recognize those responsibilities and demonstrates that he can and will comply with the ethical rules governing attorneys at law, we reluctantly conclude that he can no longer be permitted to practice law.

Therefore, we indefinitely suspend the respondent Richard D. Weiblen from the practice of law effective immediately. Any petition for reinstatement shall comply with Rule 18(e), RLPR. Additionally respondent shall pay to the Director's office $750 attorney fees assessed against him by the referee pursuant to Rule 15(a)(8), RLPR, for his bad faith action in interposing a general denial to the petition necessitating a one-day hearing before the referee on undisputed factual allegations, together with costs as provided in Rule 24, RLPR.

---

5. In *Agnew* we observed:
   Respondent has, in the course of his legal practice, caused unnecessary expense and annoyance to the courts, his fellow attorneys, and his own clients. The cumulative weight and severity of the violations compel us to order disbarment * * *. This summary of the referee's findings * * * is sufficient to indicate not only an ethical dereliction on the part of the respondent, but also a deficiency in professional judgment and competence. We have given careful consideration to the nature of respondent's misconduct and the extent of the harm he has caused the public and the legal profession. In selecting the appropriate sanction, we endeavor to protect the public from future harm and to preserve the profession's most precious resource—public confidence in the judicial system.
   311 N.W.2d at 869, 872.