**In re Petition for Disciplinary Action against Wendy Alison NORA, an Attorney at Law of the State of Minnesota.**

No. C0-88-2283.

Supreme Court of Minnesota.

Jan. 19, 1990.

Wendy Willson Legge, Asst. Director of the Office of Lawyers Professional Responsibility, St. Paul, for appellant.

George R. Ramier, Minneapolis, Minn., for respondent.

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for discipline alleging respondent Wendy Alison Nora violated professional responsibility standards in three separate client matters. We rejected a stipulation by the parties providing for public reprimand and two years unsupervised probation. We remanded for a hearing and appointed a referee, who subsequently filed findings of facts, conclusions and recommended discipline of a public reprimand and two years supervised probation.

Nora's initial order for a hearing transcript pursuant to Rule 14(e) of the Minnesota Rules of Lawyers Professional Responsibility was cancelled when she and the Director submitted a post-hearing stipulation adopting the referee's recommended discipline. In this stipulation the Director and Nora agreed the referee's findings and conclusions "are conclusive." In our order rejecting the post-hearing stipulation, we noted the referee findings "are deemed to have been admitted." We then ordered briefing and heard oral arguments in the matter.

Nora graduated from the University of Wisconsin Law School in 1975 and has been an attorney at law admitted to practice in Wisconsin since June 9, 1975. She was admitted to the Minnesota bar on September 20, 1985, without examination based on her prior years of practice. This disciplinary action arises out of Nora's professional misconduct in three client matters.

I.

1. *State Bank of Boyd Matter.*

On October 23, 1984, the Commissioner of Commerce (Commissioner) closed the State Bank of Boyd (Bank), appointed the FDIC to act as receiver and approved the sale of the Bank's assets and transfer of its liabilities. On behalf of her clients, owners of Lac Qui Parle Bancorporation, the Bank's holding company, Nora petitioned a district court for an alternative writ of mandamus requesting recovery of the Bank's property and certificate. The petition was denied. A Minnesota Court of Appeals panel affirmed, in part because Nora's clients lacked standing. *State Bank of Boyd v. Hatch,* 384 N.W.2d 550, 555 (Minn.App.1986). In an attempt to reopen the Bank without authorization by the Commissioner, Nora and her clients became involved with Jonathan May, who claimed to be the trustee of a multibillion dollar trust that could be used to provide capital to the Bank. The referee found Nora inadequately investigated May, his claims and his references.

Nora was named purported chairman of the board of the Bank's holding company and May was named as the Bank's purported president. Without having received any legal tender as capitalization for the Bank, Nora authorized distribution of cashier's checks signed in blank by May under an alias to individuals Nora had not adequately investigated, whom May represented were to become authorized agents of Lac Qui Parle Bancorporation. No usage restrictions accompanied the checks, instead Nora assumed, but did not verify, that May had conveyed her oral instructions to the recipients. May cashed several of the checks and left the state with an undisclosed number of others. An individual in Florida used some of the checks to purchase personal goods, which were subsequently returned. Nora also authorized the issuance of cashier's checks to individuals facing either the expiration of redemption period on their farm or the sale of personal property, and others to test the validity of cashier's checks as final payment, even if drawn on an insolvent and closed bank. At that time, Nora was aware the Bank did not comply with the requirement that Minnesota banks have segregated cash on deposit for the payment of cashier's checks.

The referee found Nora's public announcement of the Bank's reopening and capitalization was "without basis in fact or law." Nora then knew a Minnesota bank must display its certificate and that the Commissioner had possession of the Bank's certificate. Upon an investigation of the cashier's checks by the Minnesota Department of Commerce, Nora and her clients stipulated to a temporary restraining order enjoining them from engaging in the banking business. Nora now characterizes the attempted reopening as "flakey."

Because of Nora's inadequate investigation of May and improper authorization of cashier's checks, the referee concluded Nora violated Rule 1.1 of the Minnesota Rules of Professional Conduct (MRPC) (competence). Her misrepresentations regarding the Boyd Bank reopening and capitalization were deemed to constitute a violation of MRPC 8.4(c). The referee further concluded Nora "engage[d] in conduct prejudicial to the administration of justice" in violation of MRPC 8.4(d), by pursuing the reopening after the court of appeals panel determined her clients had no standing. In mitigation, Nora had no dishonest or selfish motive in this matter and did not personally gain from the cashier's checks. She also fully cooperated in the Boyd Bank investigation, which the referee found "likely averted further harm to her clients or others."

### 2. *Gennrich Matter.*

On behalf of the Gennrichs, Nora brought a third-party claim against the State Bank of Cologne's attorneys (Attorneys) and a bank officer, alleging they obtained an ex parte replevin order against the Gennrichs in bad faith. In an order, a district court specifically found the Cologne Bank's ex parte replevin application had not been made in bad faith. The Attorneys requested Nora dismiss with prejudice the third-party claims on the basis of the order, but she refused to do so. Upon a motion by the Attorneys, all claims against them were dismissed with prejudice, and Nora and her law firm, Hopewell, Nora and Schmidt, were assessed Rule 11 fees of $5,378.28.

Nora formed Hopewell, Nora and Schmidt, P.A., and transferred the Minnesota assets of Hopewell, Nora and Schmidt to a bank account in the name of the professional association in, as the referee found, an "attempt to insulate law firm assets and to impede collection efforts, particularly as to the judgment of the [Cologne] Bank Attorneys." The Carver County District Court then granted an order directing the bank to release monies then held in the professional association's account, and assessed fees of $1,025.00 against Nora and her firm. Further, on three occasions a court of appeals panel assessed Nora and her firm fees for attempts to appeal from nonappealable partial determinations regarding the Gennrich matter. Part of the attorney fees assessments and all of the $5,378.28 Rule 11 costs have been paid.

The referee concluded Nora's conduct in the Gennrich matter violated MRPC 3.1 (frivolous claim) and 8.4(d) (conduct prejudicial to administration of justice). While Nora believed refusing to dismiss the third-party claim was necessary to protect her clients' interests, her motives in shielding her firm's assets are more questionable.

### 3. *Ruud Matter.*

By mortgaging their farm to the Federal Land Bank of St. Paul (Federal Bank), the Ruuds received $335,000.00 in the form of bank drafts or checks that they used to satisfy obligations to various creditors. On behalf of the Ruuds, Nora brought suit against the Federal Bank on various grounds based on Nora's "money theory," whereby she argued the Federal Bank did not loan money, but merely extended credit. In granting summary judgment in favor of the Federal Bank, a Kandiyohi District Court noted Nora's money argument "goes well beyond the imaginative into the depths of absurdity." The court assessed fees of $1,000.00 against Nora personally because all but one count of the Complaint was frivolous, the litigation was undertaken to buy time and to delay efforts to recover certain farm land, and success on the merits was never anticipated. Nora paid the Federal Bank $800.00 in settlement of the attorney fees assessment.

Because the referee found Nora brought the Ruud litigation primarily as a delay tactic and her money theory was not asserted in good faith, he concluded she violated MRPC 3.1 (frivolous claim) and 8.4(d) (conduct prejudicial to administration of justice). Although Nora acted upon her subjective beliefs and her personally held theories as to what the law should be, she stated at oral argument she now can distinguish political arguments that are improperly made from legal theories that are appropriately brought.

### II.

Other mitigating factors exist. Nora has no prior disciplinary record, she has paid most of the sanctions imposed against her, and she has made full and free disclosure in this action. Because one purpose of attorney discipline is to protect the public, *In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983), an attorney's remorse or lack of it is an important factor. *See In re Carey,* 380 N.W.2d 806, 809 (Minn.1986) (disbarment appropriate when continuing pattern of misconduct constitutes immediate danger to public). At the referee hearing, Nora maintained she would reassert her positions in the Gennrich and Ruud matters if the law were the same. In response to a question at oral argument, however, she explained her understanding of the law now is different.

While an attorney is properly a zealous advocate for his or her client, *see* Preamble to Minnesota Rules of Professional Conduct, the perspective of an objective and detached judgment nevertheless must remain. This important objectivity is lost when an attorney becomes too personally involved in client matters and oversteps the bounds of ardent representation, as Nora admits she did. As we said in *In re Getty:* "Lawyers must be encouraged to represent their clients vigorously and we are hesitant in anyway to interfere with an attorney's ability to do so; yet, there is a line that should not be crossed and respondent has crossed it." 401 N.W.2d 668, 671 (Minn. 1987).

### III.

We concur with the referee's findings and conclusions in this disciplinary action, and after having examined the complete record in this case, we NOW ORDER:

1. Respondent Wendy Alison Nora is hereby reprimanded and shall be indefinitely suspended from the practice of law. She shall not be eligible to apply for reinstatement until 30 days from the filing of this opinion.

2. To be eligible to apply for reinstatement, Nora shall successfully complete the portion of the Minnesota bar examination on the subject of professional responsibility.

3.  Nora shall pay, within 60 days from the filing of this opinion, to the Director $750 in costs and disbursements.

IT IS SO ORDERED.