**In re Petition for DISCIPLINARY ACTION AGAINST Michael A. PINOTTI, an Attorney at Law of the State of Minnesota.**

No. C8–97–1955.

Supreme Court of Minnesota.

Oct. 22, 1998.

**14.** *Matter of Gershcow's Will,* 261 N.W.2d 335, 340 (Minn.1977).

Edward J. Cleary, Henry C. Granison, Office of Lawyers Prof. Resp., St. Paul, for appellant.

Michael A. Pinotti, Little Canada, pro se.

OPINION

PER CURIAM.

On October 22, 1997, the Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent, attorney Michael A. Pinotti, alleging violations of Minnesota Rules of Professional Conduct 1.1 (incompetence), 3.1 (filing frivolous claims), 3.4(c) (knowingly disobeying an obligation under rules of a tribunal), and 8.4(d) (engaging in conduct prejudicial to administration of justice). Following a two-day hearing in January of 1998 at which numerous witnesses testified, the referee made 77 findings of fact, concluding that the Director had proven the allegations of the petition by clear and convincing evidence, and recommending that respondent be suspended from the practice of law indefinitely with no right to apply for reinstatement for 90 days. Respondent appeals to this court contesting the referee's findings, conclusions and recommendation that he be suspended from the practice of law.

Respondent is a solo practitioner who was admitted to practice law in Minnesota in 1981. He was previously admonished in 1990 for asking a client not to file an ethical complaint against him. The current charges against respondent are based on his behavior in three separate lawsuits over a period of approximately ten years.

### 1. Dahlgren v. Caring and Sharing, Inc.

Dean R. Dahlgren, doing business as Advance Therapies, provided physical therapy services to elderly and handicapped clients of Caring and Sharing, Inc. (C & S) pursuant to a services agreement which provided that C & S could terminate the agreement "for any reason" by giving two weeks written notice to Dahlgren. C & S sent Dahlgren a notice of termination in August of 1987. On behalf of Dahlgren, respondent filed a complaint alleging numerous claims against C & S stemming from the termination of the contract but failed to attach a signed acknowledgement as required by Rule 11, Minn. R. Civ. P. The complaint was amended twice to include additional claims.

In August of 1988 the trial court granted C & S's motion to dismiss the complaint filed by respondent because it failed to state a claim upon which relief could be granted. On respondent's appeal, the court of appeals affirmed holding the provision that Dahlgren could be terminated "for any reason" could only be interpreted as allowing C & S to terminate him at will or without cause.[1]

Respondent filed a complaint on March 15, 1989 against Nancy Wolff, a consultant who had reviewed the therapy services of C & S. Respondent alleged that through Wolff's report to C & S she had committed numerous offenses against Dahlgren including tortious interference, restraint of trade, unfair competition, deceit, fraud, interference with prospective economic advantage, gender discrimination, and defamation. Several weeks later, respondent filed a "Corrected Complaint" against C & S which alleged tortious interference, fraud and negligent hiring, defamation, restraint of trade, deceit, tortious interference by defamation, and tortious in-

---

1. *Dahlgren v. Caring and Sharing, Inc.*, No. C1–88–2275, 1989 WL 23319, at *1 (Minn.App. March 21, 1989), *pet. for rev. denied* (Minn., April 26, 1989).

terference by fraudulent or deceitful acts. This second suit against C & S contained many of the same allegations and claims dismissed in the first suit.

During the course of discovery, respondent's deposition of Wolff was terminated because respondent asked inappropriate questions regarding the financial arrangements between Wolff and her counsel. Respondent attempted further discovery by motion to compel Wolff to appear for a second deposition and to respond to discovery requests for information on financial arrangements with her counsel. The motion was denied, and respondent was sanctioned $1000 for his "mudslinging and conjecture." [2]

In October of 1989, the trial court granted summary judgment in favor of both Wolff and C & S. Each was awarded $1000 for attorney fees under Rule 11, Minn. R. Civ. P.[3] Respondent again appealed the order of summary judgment to the court of appeals, which affirmed awarding an additional $2000 to Wolff and C & S for attorney fees and costs incurred on appeal.[4]

## 2. Radloff v. First American National Bank

Respondent filed an action on behalf of Steven and Barbara Radloff in May of 1988 against First American National Bank of St. Cloud, N.A. (First American) and First Farm Corporation, Inc. (First Farm), and two organizations for which First American was allegedly a managerial agent, Royalton Partners and Country Fresh Produce. Although the complaint named all four entities, only First American was served. The claims involved events surrounding the Radloffs' 1985 bankruptcy and alleged that First American breached its lending contracts, conspired to deceive the Radloffs, breached its fiduciary obligations to the Radloffs, and committed acts of trespass, deceit, fraud, economic coercion, outrage, contract interference, and prospective economic advantage interference. The complaint was amended three times to include additional claims. In September of 1989, the trial court issued an order which, *inter alia*, required additional parties to be added no later than October 22, 1989. Because respondent failed to serve Royalton Partners and Country Fresh Produce, they were dismissed with prejudice from the lawsuit in December of 1989.

Respondent moved to amend the complaint a fourth time in order to add a RICO claim in March of 1990, one month before the close of discovery. The trial court denied the motion and in the same order denied defendant's request to join First American Farm Credit Company (Farm Credit) as a defendant since Farm Credit, although included as a defendant in the amended complaints, had not been served prior to the October cut-off date. Summary judgment was granted for the defendants on two of the claims alleging personal injury.[5]

Respondent moved the court to take judicial notice of a Minnesota Supreme Court case which affirmed the burglary conviction of a potential witness, the First American employee who had overseen the Radloffs' farming operations. The trial court denied the motion finding the assertion that the court should take judicial notice of a 22–year old burglary conviction of a witness "highly improper." [6]

The remaining defendants, First American and First Farm, moved for summary judgment on the remaining claims. In his memorandum opposing summary judgment, respondent stated that many of the original

2. *Dahlgren v. Wolff*, No. C5–89–003189 (Second Jud. Dist. Aug. 10, 1989) (order denying motion to compel).

3. *Dahlgren v. Wolff*, No. C5–89–003189 (Second Jud. Dist. Oct. 10, 1989) (order granting summary judgment); *Dahlgren v. Caring and Sharing, Inc.*, No. C8–89–006670 (Second Jud. Dist. Oct. 10, 1989) (order granting summary judgment).

4. *Dahlgren v. Wolff*, No. CX–90–69, 1990 WL 43050, at *2 (Minn.App. April 17, 1990).

5. *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. C3–88–455 (Seventh Jud. Dist. April 10, 1990) (order granting summary judgment).

6. *See Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. C3–88–455 (Seventh Jud. Dist., May 31, 1990)(order denying judicial notice).

claims against the defendants had been withdrawn when he failed to include them in a court-ordered damage study submitted several months earlier. This was the first notice to the court and the defendants that these claims had been abandoned.

At the summary judgment hearing, the court raised the issue of whether the Radloffs' claim against First American should be referred back to the bankruptcy court as a claim extant at the time of the bankruptcy or whether the bankruptcy trustee's abandonment of the claim was final. The next day, July 12, 1990, the trial court placed an *ex parte* telephone call to Jean Didier, counsel for First American, to discuss tabs which had fallen off First American's exhibits. The trial court asked Didier's opinion on the abandonment, and Didier responded that she agreed with respondent that the bankruptcy trustee's abandonment was final.

The trial court granted summary judgment on all remaining counts on July 19, 1990.[7] In so ruling, the trial court adopted the position advocated by respondent—that the abandonment of the claim by the trustee was final and irrevocable.[8] Respondent subsequently learned of the *ex parte* conversation between the court and Didier when First American submitted a timesheet noting the July 12 telephone call as part of the supporting documentation for its motion for disbursements and attorney fees. Respondent brought up the *ex parte* conversation during a hearing on September 17, 1990, and asked that the issue of costs and disbursements be postponed pending depositions regarding the contact. The trial court denied the postpone-

ment. On October 2, 1990 the trial court issued an order finding that numerous claims, motions and positions taken by respondent were frivolous and in bad faith including respondent's insufficient service of Royalton Partners and Country Fresh Produce, the attempt to join Farm Credit, the RICO and personal injury claims and respondent's failure to unambiguously withdraw the claims he was no longer pursuing.[9] The court sanctioned respondent by awarding attorney fees of $22,037 against respondent and the Radloffs, with an additional $6,104.37 in costs and disbursements awarded only against the Radloffs.[10] Respondent appealed both the July summary judgment order and the October sanctions order, and both were upheld by the court of appeals.[11]

Apparently unwilling to accept the trial court's order of summary judgment, affirmed by the court of appeals, respondent sought to reopen the matter based upon the trial court's *ex parte* communication with opposing counsel, a communication the trial court acknowledged was inappropriate but which in fact resulted in a ruling favorable to respondent. The motion was denied.[12] The court noted that respondent had raised the issue during the appeal of the summary judgment, thereby exhausting his right of appeal and leaving the trial court without jurisdiction of the matter.[13] Respondent sought to appeal but review was denied by both the court of appeals and this court.[14]

On April 1, 1993, respondent filed another lawsuit on the Radloff matter, this time in the U.S. District Court, District of Minnesota, against First American, First Farm, and

---

7. *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. C3–88–455 (Seventh Jud. Dist., July 19, 1990) (order granting summary judgment).

8. *Id.*

9. *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. C3–88–455 (Seventh Jud. Dist., Oct. 2, 1990) (order awarding attorney fees to First American).

10. *Id.*

11. *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. C5–90–1792, 1991 WL 10211, at *4 (Minn.App. Jan.28, 1991), *pet. for rev. denied*

(Minn., March 27, 1991), *pet. for reconsideration denied* (Minn., April 18, 1991), *cert. denied* (U.S. Oct. 7, 1991); *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, 470 N.W.2d 154, 159 (Minn.App.1991), *pet. for rev. denied* (Minn., July 24, 1991). The amount of attorney fees awarded was reduced to $21,070 by the court of appeals.

12. *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. C3–88–455 (Seventh Jud. Dist., Dec. 9, 1991) (order denying various motions).

13. *Id.*

14. *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. C8–92–59 (Minn.App., Feb. 5, 1992), *pet. for rev. denied* (Minn., Apr. 1, 1992).

Linda Sinotte in her official capacity as court administrator for the Seventh Judicial District. Returning again to the trial court's *ex parte* communication of almost three years earlier, respondent claimed that Sinotte had failed to include documentation of the *ex parte* discussion between Didier and the trial court judge when she certified the record to the appellate court. Again the defendants moved for summary judgment, and again it was granted.[15] The Eighth Circuit Court of Appeals affirmed the grant of summary judgment.[16] Respondent's motion for leave to file an untimely petition for rehearing en banc was denied.[17] Respondent's subsequent motion for "clarification" was also denied.[18]

### 3. Bergeron v. Northwest Publications

Joseph T. Bergeron was employed as a printer in the composite room of Northwest Publications, Inc. (Northwest), the publisher of the St. Paul Pioneer Press. Bergeron, a diabetic, worked the 10 a.m. to 5 p.m. shift prior to November of 1993. Bergeron's shift was then changed to 10:30 a.m. to 5:30 p.m., and later changed from 11 a.m. to 6 p.m. Respondent filed suit in federal district court on behalf of Bergeron alleging that by changing his hours Northwest had failed to reasonably accommodate his disability in violation of the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA). He asked the court to "[e]njoin Northwest to reinstate Bergeron to a 10:00 a.m. commencement time."

Joseph Dennis, counsel for Northwest, wrote several letters to respondent over the next few months to inform him that Bergeron's claims were groundless and not supported by the medical evidence. While Bergeron's diabetic condition was documented by numerous medical records from five different doctors, who generally agreed that Bergeron's condition required a regular rather than rotating shift, none expressed an opinion that Bergeron was medically required to work a certain specific shift. Respondent did not reply and Dennis served a motion for sanctions on respondent for frivolous litigation.

Rather than withdraw the claims, on July 13, 1995 respondent filed a motion to dismiss and for attorney fees, claiming that Northwest had substantially met the demand for reasonable accommodations under the ADA by allowing Bergeron to take his lunch from 5:00 to 5:30 p.m., and that Northwest had refused plaintiff's offer to settle the lawsuit. Northwest countered with a motion for summary judgment and a motion for sanctions.

Following the close of discovery on August 1, 1995, respondent revoked all of Bergeron's medical releases despite the fact that Northwest had several outstanding requests for medical records. This precipitated another round of motions—by Northwest to extend the time and to compel discovery of the medical records and by respondent opposing the discovery with a cross-motion to compel discovery of the training records of other Northwest employees. A hearing on these discovery motions was held on August 21, 1995 before a federal magistrate judge who cautioned respondent during the hearing:

> I'm going to take Defendant's motion for summary judgment under advisement. I'm also going to take under advisement the motion of Plaintiff to dismiss. If the facts as alleged here are proved [it] would result in serious sanctions upon you, Mr. Pinotti, for violation of the rules of this court and for violation of your responsibility as an attorney. They [sic] could also result in serious sanctions to your client for the additional reason that it would represent misuse of the Americans [with] Disabilities Act which has the effect of denigrating the rights of others who seek to recover under this act.

**15.** *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. 4–93–CV–331 (D.Minn. Aug. 27, 1993) (order granting summary judgment for First American).

**16.** *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. 93–3539MN, 1994 WL 578226 (8th Cir., Oct.20, 1994).

**17.** *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. 93–3539MNMI (8th Cir., Nov. 16, 1994).

**18.** *Radloff v. First American Nat. Bank of St. Cloud, N.A.*, No. 93–3539MNMI (8th Cir., Apr. 13, 1995).

I'm going to set this matter down for a hearing on October 18 at nine in the morning. I will grant the motion of the Plaintiff [sic] for additional discovery on the narrow subject as to which it was sought, and if expedited discovery is needed to meet the hearing of October 18, you may apply to the Court for that upon telephone notice to Mr. Pinotti.

While the magistrate's comments mistakenly referred to granting the motion of the plaintiff, the written order, issued the same day, clearly stated that Northwest's discovery motions were granted, not respondent's.[19] Respondent sought to take advantage of the situation however, by claiming that his motion for discovery had been granted "in open court," and he then filed a motion to "clarify" the magistrate's order. This motion was also denied on September 21, 1995, with the observation that it was "not brought in good faith," but the court's memorandum erroneously stated that respondent had no pending discovery motion.[20] Respondent filed a motion "to correct clerical errors" in the September 21 order and, because he did in fact have a pending discovery motion, he asked the court to "correct" the order by deleting the finding of bad faith and granting respondent's motion to compel discovery. The motion was denied.

Respondent filed a motion in October of 1995 withdrawing his July 13, 1995 motion to dismiss the reasonable accommodations claim under the ADA, stating that the "reasonable accommodation that existed from May 8, 1995, to about August 14, 1995" had been changed. Respondent made a simultaneous motion to sanction Northwest and its counsel for the July 31, 1995 sanctions motion, claiming the sanctions motion filed by Northwest was "knowingly based on a lack of evidence."

The trial court granted partial summary judgment for Northwest on January 12, 1996.[21] The magistrate dismissed Bergeron's MHRA and ADA claims as "frivolous, unreasonable and without foundation."[22] Respondent's numerous outstanding motions, characterized by the court as "a hodge podge of documents, variously captioned," were all denied.[23] The court sanctioned respondent with attorney fees for his conduct in asserting these motions and directed counsel for Northwest to report respondent to the Office for Lawyers Professional Responsibility.[24] The court declined to dismiss the claims relating to Bergeron's employment after May 1, 1995, stating only that "[i]ssues of fact are raised."[25] The magistrate later clarified this ruling by stating that he "could simply not discern from the prolix pleadings and documents * * * what the facts were concerning [Bergeron's] employment and [Northwest's] action with respect to [Bergeron's] employment" beginning May 1, 1995, and that summary judgment on those claims was therefore inappropriate.[26] Following this ruling, Northwest terminated Bergeron for filing false and frivolous claims, later ruled by an arbitrator to be a just cause for termination.

The following month respondent launched a volley of motions: (1) to postpone sanctions until trial on the merits; (2) to "vacate for it ruled on a claim Plaintiff did not assert or sign"; (3) to "vacate for it expressly quoted from a misdated Sept. 12, 1994, medical report"; (4) to "take judicial notice that the final federal court judgement in *Radloff v. First American* case is that it lacks jurisdiction"; (5) to find that Northwest counsel breached his duty of candor to court; and (6) for leave to amend the Bergeron complaint to add a count for reprisal discrimination. All of these motions were denied except the mo-

**19.** *Bergeron v. Northwest Publications Inc.,* No. 3–94–1124 (D.Minn. Aug. 21, 1995) (order granting Northwest's discovery motion).

**20.** *Bergeron v. Northwest Publications Inc.,* No. 3–94–1124 (D.Minn. Sept. 21, 1995) (order denying motion to clarify).

**21.** *Bergeron v. Northwest Publications Inc.,* No. 3–94–1124, 1996 WL 210789 (D.Minn. Jan. 12, 1996) (order granting partial summary judgment).

**22.** *Id.*

**23.** *Id*

**24.** *Id.*

**25.** *Id.*

**26.** *Bergeron v. Northwest Publications Inc.,* No. 3–94–1124 (D.Minn. Sept. 4, 1996) (order granting plaintiff's motion to amend).

tion to postpone the finding of sanctions and the amount of fees and costs awarded to Northwest.[27] The motion for leave to amend was denied without prejudice.[28] The trial court found that respondent's "confusing and contradictory motions have unreasonably multiplied the proceedings and needlessly increased the cost of litigation," and sanctioned respondent under Rule 11 by ordering respondent to complete a 40–hour private course in the Federal Rules of Civil Procedure.[29]

Respondent submitted an affidavit in late July of 1996 indicating that he had successfully completed a course on the Federal Rules of Civil Procedure and the court thereupon granted respondent's motion to amend Bergeron's complaint by alleging constructive discharge under the ADA and reprisal discrimination.

The amended complaint generated cross-motions for summary judgment. The court granted summary judgment for Northwest as to all claims regarding Northwest's termination of Bergeron but ruled that the "preferable course as a matter of judicial economy" was to refrain from ordering summary judgment on the claims concerning the period between September 4, 1995 and January 29, 1996.[30] These were the only claims to survive in any form.

Northwest and respondent entered into a stipulation on March 12, 1997, approved by the court, which provided that the orders of January 12, 1996 (granting summary judgment on the ADA and MHRA claims), September 4, 1996 (granting in part respondent's motion to amend), and February 10, 1997 (granting summary judgment for Northwest on most remaining issues) would be appealed by consent to a magistrate judge whose decision neither party had any right to appeal. If the orders were not reversed, the remaining charges would be dismissed. On December 10, 1997, Magistrate Judge Arthur J. Boylan affirmed the orders of Magistrate Judge John M. Mason, and dismissed the case with prejudice pursuant to the stipulation.[31] Despite the stipulation providing for finality however, respondent promptly filed a petition for rehearing claiming that the reviewing magistrate "overlooked or misapprehended" points of law or fact.

### 4. Disciplinary Proceedings

Citing respondent's conduct in these three lawsuits, the Director of the Office of Lawyers Professional Responsibility (Director) filed a petition against respondent on October 22, 1997, alleging that respondent had engaged in a pattern of frivolous and harassing litigation on behalf of his clients in *Dahlgren*, *Radloff* and *Bergeron* in violation of Rules 1.1, 3.1, 3.4(c) and 8.4(d) of the Minnesota Rules of Professional Conduct (Rules). Respondent filed an answer denying the charges and asserting a counterclaim against the Director for "unethical prosecution." This counterclaim, unauthorized by the Rules, was dismissed.

A hearing was held before a referee on January 20 and 21, 1998. The Director and respondent both examined and cross-examined numerous witnesses. Each side introduced extensive documentation and each was given the opportunity to present written and oral arguments at the close of the hearing. The referee issued his findings of fact, conclusions of law and recommendation for disciplinary action on February 23, 1998 finding that respondent had engaged in a pattern of harassing and frivolous litigation and "pursued litigation that a reasonable attorney would not have pursued." Due to the number and frequency of respondent's violations of the rules and his failure to acknowledge any wrongdoing, the referee recommended an indefinite suspension with no right to apply for reinstatement for three months. Pursuant to Rule 14(e), RLPR, respondent

**27.** *Bergeron v. Northwest Publications, Inc.,* 165 F.R.D. 518 (D.Minn.1996) (order for sanctions).

**28.** *Id.*

**29.** *Id.*

**30.** *Bergeron v. Northwest Publications, Inc.,* No. 3–94–1124 (D.Minn. Feb. 10, 1997) (order for partial summary judgment).

**31.** *Bergeron v. Northwest Publications, Inc.,* No. 3–94–1124 (D.Minn. Dec. 10, 1997) (order affirming Jan. 12, 1996 and Feb. 10, 1997 orders).

timely ordered a transcript; therefore the findings and conclusions of the referee are not deemed conclusive. Respondent appeals the referee's decision and "generally disagrees" with the referee's report.

We first consider whether the referee's findings are supported by clear and convincing evidence, and if so, whether the recommended discipline is an appropriate sanction.

In disciplinary cases, great weight is accorded a referee's findings and conclusions, and they will be upheld if they have evidentiary support and are not clearly erroneous.[32] When the findings are based partly "on a respondent's demeanor, credibility, or sincerity," deference to the referee as a finder of fact is particularly appropriate.[33] Findings of fact will be reversed "only if, upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made." [34]

After a careful review of the record, we conclude that it is replete with evidence of professional misconduct involving the repeated filing of unsubstantiated claims, confusing and improper motions, and seemingly endless appeals of court orders dismissing the same. We cite *as examples* respondent's filing of claims neither supported by the facts nor warranted by law in all three lawsuits— Bergeron's unsupported claim that he was medically required to work a specific shift, Dahlgren's claim of wrongful termination of an at-will contract, and the Radloffs' many groundless claims against First American— in violation of Rule 3.1; failing to abide by a stipulated agreement and order in *Bergeron* in violation of Rule 3.4(c); filing deficient, confusing and incomprehensible motions in all three lawsuits in violation of Rule 1.1; requesting judicial notice of an irrelevant criminal case and repeatedly asserting prejudice from a nonprejudicial *ex parte* communication in *Radloff,* and relitigating baseless claims in *Dahlgren* and *Bergeron* in violation of Rule 8.4(d). The referee's findings that respondent's conduct constitutes a pattern of harassing and frivolous litigation in violation of Minn. R. Prof. Conduct 1.1, 3.1, 3.4(c) and 8.4(d) are well substantiated by the evidence and are not clearly erroneous.

We now turn to the issue of whether the recommended discipline is an appropriate sanction. The recommendation of the referee regarding sanctions is also given great weight, but the ultimate responsibility for sanctioning an attorney rests solely with this court.[35] Factors to be considered in imposing the appropriate sanction include the nature and cumulative weight of the misconduct, the harm to the public and the legal profession, the attorney's prior disciplinary record, and any mitigating or aggravating factors.[36] Failure to acknowledge the severity of the misconduct is an aggravating factor.[37] Discipline may be mitigated when an attorney acknowledges the harm caused by the misconduct and the importance of future conformity with the rules of professional responsibility.[38]

We have suspended indefinitely with no leave to petition for readmission for periods ranging from 30 days to 18 months in cases similar to the matter before us. Where an attorney filed frivolous claims, failed to follow the rules of civil and appellate procedure, made misrepresentations in judicial proceedings, and disobeyed a court order, an 18–month suspension was ordered in *In re Jensen.*[39] A 30–day suspension was ordered in *In re Nora* for incompetent representation and the filing of two frivolous actions.[40] A

**32.** *In re Bergstrom,* 562 N.W.2d 674, 677 (Minn. 1997); *In re Schmidt,* 402 N.W.2d 544, 545 (Minn.1987).

**33.** *In re Hartke,* 529 N.W.2d 678, 679–80 (Minn. 1995).

**34.** *In re Strid,* 551 N.W.2d 212, 215 (Minn.1996) (quoting *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987)).

**35.** *In re Vitko,* 519 N.W.2d 206, 209 (Minn.1994).

**36.** *In re Harp,* 560 N.W.2d 696, 700 (Minn.1997) (citations omitted).

**37.** *See In re Agnew,* 311 N.W.2d 869, 872–73 (Minn.1981).

**38.** *Bergstrom,* 562 N.W.2d at 677.

**39.** 542 N.W.2d 627, 634 (Minn.1996).

**40.** 450 N.W.2d 328, 330 (Minn.1990).

60–day suspension with successful completion of a professional responsibility course was ordered in *In re Graham* for misconduct including false statements about judges and public officials and repeated frivolous motions.[41] Similarly, in *In re Tieso,* where the attorney filed a single claim which was "groundless, frivolous and unwarranted under existing law" against his former spouse and her husband, we imposed an indefinite suspension of not less than three months based both on the frivolous claim and Tieso's subsequent refusal to obey a court order awarding attorney fees against him.[42]

Respondent's behavior is strikingly similar to that sanctioned in *In re Weiblen.*[43] Like respondent, the attorney involved in *Weiblen* filed several frivolous claims as well as a "complaint and counterclaim" against the Lawyers Professional Responsibility Board alleging "abuse of process."[44] The discipline imposed in *Weiblen* also took into account the attorney's adamant refusal to acknowledge that his behavior violated the Rules.[45] As in *Weiblen,* the referee found respondent unrepentant and noted that respondent persisted, even during the pendency of these disciplinary proceedings, in filing both an appeal in violation of a court-approved stipulation as well as a counterclaim against the Director, a claim having no lawful basis whatsoever.

While we are fully aware of a lawyer's responsibility to aggressively represent his or her clients' interest, respondent's conduct here far exceeds the limits of professional representation, despite the numerous warnings of lower tribunals and heavy sanctions imposed. Ignoring the clear language of legal agreements, stipulations and court orders, respondent marched relentlessly onward with a barrage of frivolous motions and appeals to the great detriment of his clients and in total disregard of the waste of judicial resources. We therefore hold that the appropriate sanction is an indefinite suspension pursuant to Rule 15(a)(2), Rules on Lawyers Professional Responsibility (RLPR), for a minimum of ninety days. Respondent shall comply in all respects with Rule 26, RLPR, and as a condition of reinstatement, shall comply with Rule 18, RLPR, and must prove successful completion of courses approved by the Director of the Office of Lawyers Professional Responsibility and certified by the State Board of Continuing Legal Education in legal ethics, the Rules of Civil Procedure, and trial procedure. If respondent is reinstated, he shall be subject to a one-year period of probation pursuant to Rule 15(a)(4), RLPR, and his supervising attorney shall be approved by and subject to the supervision of the Director of the Office of Lawyers Professional Responsibility.

Due to the gravity of respondent's misconduct, there shall be no stay in the imposition of his suspension.

It is so ordered.

RUSSELL A. ANDERSON, J., took no part in the consideration or decision of this case.

---

41. 453 N.W.2d 313, 325 (Minn.1990).

42. 396 N.W.2d 32, 33–34 (Minn.1986).

43. 439 N.W.2d 7 (Minn.1989).

44. *Id.* at 10–11.

